GREEN *et al.* v. COLE, *Appellant.*

In Banc, March 19, 1895.

1. **Contract:** PLEADING: VARIANCE. In an action for the breach of a contract for the sale of land the petition charged an agreement by the terms of which the plaintiffs were to have the land surveyed and divided into lots and to sell it within a named time, provision being made as to the division of net proceeds of such sale. The evidence offered in support of the petition was an unsigned pencil memorandum of a proposition by plaintiffs to take charge of and sell the land upon substantially the terms stated in the petition, but containing the further stipulation that plaintiffs should receive an additional commission of one dollar a front foot and should have the entire management of the property. The court gave a declaration of law for plaintiffs authorizing a finding for them on the case set forth in the petition, and also gave a declaration of law to the effect that if the contract was in the terms stated in the pencil memorandum the finding should be for defendant. The court found for plaintiffs. *Held,* that the issues were tried upon an erroneous theory; that the finding of facts was without evidence to support it, and a retrial should be awarded.

2. **Principal and Agent:** REVOCATION OF EMPLOYMENT: CONTRACT. A principal is liable in damages to his agent where he employs the latter to plat and sell land within a fixed time, and, after the agent has performed services under the contract, the principal, without cause, revokes the authority and sells the land himself.

3. ——: ——: MEASURE OF DAMAGES. The proper measure of damages in such action by the agent is the profit, if any, which would have resulted to him, had he been permitted to complete the contract by selling the land.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED AND REMANDED.

*L. H. Waters* and *Elijah Robinson* for appellant.

(1) Plaintiffs were permitted to recover upon an alleged agreement on which they had not sued, and on which no action could be maintained by them. (2) No agreement between the parties was ever consummated. It was to have been reduced to writing and signed by the parties, which was never done. Nothing was ever done in pursuance of any contract or agreement between the parties. (3) There was no contract. The minds of the parties never "assented to the same thing in the same sense." 1 Addison on Cont. [Morgan's Ed.], p. 37. (4) The alleged contract (if ever made) was a contract of agency, and revocable at the pleasure of the defendant. Story on Agency, sec. 462, p. 579; 1 Parsons on Contracts, 69; *Coffin v. Landis*, 46 Pa. St. 426; *Brown v. Poor*, 38 Cal. 550; *Gaty v. Foster*, 18 Mo. App. 639; *Gilbert v. Holmes*, 69 Ill. 184. (6) A power not engrafted on an interest in the property is revocable. *Hunt v. Rausmanier's Adm'r*, 8 Wheat. 174; *Blackstone v. Buttermore*, 53 Pa. St. 266. (7) The plaintiffs acquired no interest in defendant's land by the alleged contract, and it follows that any agency created thereby was revocable. *Green v. Cole*, 103 Mo. 70. (8) A sale by defendant of the land in question was a revocation of any agency concerning it. Story on Agency, secs. 475, 476, p. 587; *Bissell v. Terry*, 69 Ill. 184. (9) The court erred in giving plaintiffs' first and second instructions. *State ex rel. v. Walker*, 88 Mo. 279; *Walker v. Dennison*, 86 Ills. 142; *Green v. Cole*, 103 Mo. 78. (10)

The court erred in refusing defendant's first, fifth, sixth and seventh instructions. The plaintiff, T. J. Green, swears that he prepared the memorandum read in evidence, and handed it to the defendant, and that defendant accepted it. If that be true, plaintiffs are not entitled to recover. The sixth instruction as to the measure of damages should have been given. Under the evidence they were only entitled to nominal damages, if anything. (11) The alleged agreement set out in plaintiffs' petition is within the statute of frauds. (12) The instructions are conflicting. (13) The damages are excessive.

*Gates & Wallace* and *C. O. Tichenor* for respondents.

(1) The plaintiffs recovered on the agreement alleged in their petition, and the agreement was fully proven by the greater weight of the testimony. (2) As to whether there was such a contract entered into between plaintiffs and defendant is a question of fact. (3) Even if the pencil memorandum, which was not signed by either party, differed in any particular from the contract alleged in the petition (we no not admit that it does when considered in connection with all the evidence touching the agreement), yet it can not be pretended that there was "an entire failure of proof of the cause of action, not in some particular, or particulars only, but in its entire scope and meaning," and there having been no objections or exceptions made on the ground of variance and no affidavit filed, as required by the statute, it now comes too late, even if there was any foundation for it. R. S. 1889, secs. 2096, 2097, and 2238. *Fischer v. Max*, 49 Mo. 404; *Brown v. Railroad*, 50 Mo. 461; *Turner v. Railroad*, 51 Mo. 501; *Clements v. Maloney*, 55 Mo. 352; *Wells*

*v. Sharp*, 57 Mo. 56; *Ely v. Porter*, 58 Mo. 158; *Bennett v. McCanse*, 65 Mo. 194; *Meyers v. Chambers*, 68 Mo. 626; *Ferris v. Thaw*, 72 Mo. 446. (4) Even if it was the intention of the parties to reduce the contract to writing, yet if they proceeded to act on it as a valid, existing contract, then it is immaterial whether the contract was reduced to writing or not. *Green v. Cole*, 103 Mo. 76, and authorities there cited. (5) Although the defendant had the power to rescind the contract (which he did by selling the land) still he did not have the right to do so, and must indemnify the plaintiff for the breach of the contract. *Green v. Cole*, 103 Mo. 70; Mechem on Agency, sec. 209, p. 136, and sections 620 to 624 inclusive, pp. 447 to 454, and the authorities cited under points 6 and 8. (6) The contract in the case at bar could not be rescinded by the defendant without his being liable to the plaintiffs in an action for damages. The services rendered by T. J. Green under the contract at defendant's request were a valuable consideration, the contract was partly performed and by the terms of the contract it was (if necessary) to continue for a certain time, viz.: Plaintiff was to have two years in which to perform his part of it. Story on Agency [9 Ed.], sec. 446, p. 582; *Gales v. Leckie*, 2 Starke, 107; *Lewis v. Ins. Co.*, 61 Mo. 534; *Wiggins Ferry Co. v. Railroad*, 73 Mo. 420; *Pond v. Wyman*, 15 Mo. 175; *Nearns v. Harbert*, 25 Mo. 352; *Park v. Kitchen*, 1 Mo. App. 357; *Little v. Mercer*, 9 Mo. 218; *Wood v. Stephens*, 46 Mo. 555; *Nesbitt v. Hilser*, 49 Mo. 385; *Emmons v. Elderton*, 76 Eng. Com. L. 495; *Black v. Woodrow*, 39 Md. 194. That this service was a valuable consideration, see *Halsa v. Halsa*, 8 Mo. 303; *Hudson v. Busby*, 48 Mo. 35; *U. S. v. Linn*, 15 Pet. (U. S.) 290. (7) The first declaration of law given at request of plaintiffs is correct. It was fully warranted by the pleadings and

Green v. Cole.

the evidence. (8) The second declaration of law given for plaintiffs is correct. The proper measure of damages is the profits which plaintiffs would have made if they had been allowed to carry out the contract on their part. It is not a case of speculative or remote profits, because here the probable profits were not only within the contemplation of the parties, but were the very gist and object of the contract. *Durkee v. Gunn*, 41 Kan. 496; *Hawley v. Smith*, 45 Ind. 183; *Pond v. Wyman*, 15 Mo. 175; *Wiggins Ferry Co. v. Railroad*, 73 Mo. 389; *Lewis v. Ins. Co.*, 61 Mo. 534; *Mfg. Co. v. Mfg. Co.*, 100 Mo. 325; *Lumber Co. v. Warner*, 93 Mo. 374; *Nearns v. Harbert*, 25 Mo. 352; *Gales v. Leckie*, 2 Starkie, 107; *Park v. Kitchen*, 1 Mo. App. 357; *Dobbins v. Emmons*, 18 Mo. App. 316; *Kingland v. Iron Co.*, 29 Mo. App. 540; *Goldman v. Wolf*, 6 Mo. App. 490. (9) The damages were not excessive; on the contrary they were very moderate. Defendant sold the land for $50,000, all of which was paid to him. The uncontradicted evidence on the part of the plaintiffs showed that within the two years from the date of the contract the land could have been sold by them for from $84,000 to $110,000. (10) On the whole case the judgment was for the right party, and should be affirmed.

MACFARLANE, J.—A former appeal in this case is reported in 103 Mo. 70. The case was retried without change in the pleadings. A jury was waived, and there was a finding and judgment in favor of plaintiffs for $9,970. Defendant again appealed.

I. The suit is to recover damages for the breach of a contract under the terms of which it is alleged that defendant employed plaintiffs to sell for him a tract of seventeen acres of land in Kansas City. The

petition charged the contract to have been in the following terms:

"The plaintiffs were to have said real estate surveyed and replatted in small tracts or lots, put into a condition to sell, to take charge of the sale thereof, and to sell the said real estate as the same should be replatted; that out of the proceeds of said sale or sales there were to be paid, first, the necessary expenses attending said survey, replatting and putting of said ground into condition for sale; then, next, there was to be paid to said defendant the sum of $30,000 and interest on $15,000 thereof, at the rate of eight per cent. per annum from the date aforesaid until said $30,000 should be paid; then, the balance of the proceeds arising from said sale was to be equally divided between the plaintiffs and the defendant."

T. J. Green, one of the plaintiffs, testified in chief as follows:

"*Q.* State what propositions were made and accepted, if any? *A.* I talked to Mr. Cole—after the negotiations to purchase the property had fallen through—I talked to him about my methods of handling real estate for a portion of the profits, and he said to me, 'What is there to hinder you and I from handling this, or your handling this for me?' I said, 'Nothing in the world, if we can agree on the terms,' and the subsequent conversation led to an agreement.

"*Q.* Go on and state as well as you can the conversation? *A.* Well, I agreed to pay him $30,000 for the tract of ground described in the petition out of the proceeds of the sales of the ground after expenses were paid; and all proceeds over and above $30,000 and expenses were to be divided equally between Mr. Cole and myself, or the firm, rather, with this exception, that I was to pay eight per cent. on $15,000 of the $30,000, which was the net price Mr. Cole was to have

Green v. Cole.

for his ground. All over $30,000 was to be divided equally between us after expenses were paid.

"*Q.* Was there any time fixed which you were to have to do this? *A.* I was to have two years in which to sell the ground.

"*Q.* Was there anything else said in regard to what you were to do with it? *A.* Yes, sir. The understanding and agreement was that I was to proceed to get it in shape for sale, which I did. I platted it, or had it platted, then graded and put it in shape, the weeds cut around the edges of the ground, and on the ground, and was making every arrangement to have the ground seeded, and had parties ready to purchase some lots there—had offers made on them.

"*Q.* Where did that occur? *A.* In my office on West Sixth street in this city.

"*Q.* Do you know what time of day it was that you had this understanding with the defendant? *A.* It was in the afternoon; I think it may have been about 5 o'clock.

"*Q.* State whether or not Mr. Cole accepted the proposition on your part to handle it that way; what did he say? *A.* Well, I don't know that I can state exactly what he said, that is, all he said; I can state some things.

"*Q.* Well, what can you remember. *A.* I remember that I had drawn up an agreement which Mr. Cole read over, and it was acccepted by him and agreed to by me.

"*Q.* Was that signed by either one of you? *A.* It was not signed by either one of us. I was about to draw up a copy, which we were ready to sign, but Mr. Cole said he was in a hurry for the train and he would take the copy and send me a copy signed."

On cross-examination he testified:

"*Q.* Tell the court just what you did say about the dollar a foot? *A.* Well, I don't know that I can give the exact language of the contract.

"*Q.* Tell the court as well as you can remember it? *A.* That a dollar a foot would be a part of the compensation for handling the ground.

"*Q.* Was Mr. Cole present when you wrote that? *A.* Yes, sir.

"*Q.* You discussed this matter with him in your office? *A* Yes, sir.

"*Q.* And you say that you reached terms? *A.* Yes, sir.

"*Q.* Made an agreement there? *A.* Yes, sir."
*    *    *.

"*Q.* Tell the court why it was that in writing this paper you did not put it in the form of an agreement rather than in the form of a proposition to Cole? *A.* This was a memorandum which was agreed to by us there and then.

"*Q.* You begin by saying, 'I will handle Troost avenue tract on the following terms.' Why was it, if you had come to a conclusion or an agreement, you did not put that in the form of an agreement, rather than to state it in the form of a proposition? *A.* Why, I presume the reason was because we didn't agree on the proposition until it was written.    *    *    *.

"*Q.* If you intended this to be a contract, if the terms had all been agreed on, and this paper was to be signed as the written evidence of the agreement between you and Mr. Cole; state why it was that you didn't date it, and why you wrote it in pencil. *A.* I didn't say that paper was to be written evidence. If Mr. Cole had had time, I presume the idea was to make two copies, dated properly and signed; but Mr. Cole accepted it and with the explanation that he was in a hurry for his train, left the office.

"*Q.* Was that to be signed or not? *A.* I understand so. As I said, Mr. Cole took that memorandum and was to make a copy and send to me signed * * *.

"*Q.* Was it the understanding, at the time that you and Mr. Cole had this conversation, that whatever contract you made should be reduced to writing—signed in writing? *A.* The understanding was, as I have testified before, that the agreement was accepted there, and Mr. Cole would write a copy, execute it and send it to me."

During the cross-examination the written memorandum was shown to witness and by him identified, and it was in reference to it that he testified. The memorandum was read in evidence by defendant and was as follows:

"I will handle the Troost Ave. tract on the following terms: Thirty thousand dollars to be paid in cash or first mortgage notes secured on the property, and to be paid out of the first sales made after commission of one dollar per front foot is paid. All notes to bear interest at not less than eight per cent., payable semiannually, without G. M. Cole's written consent, payable one, two, three, four and five years from date, at the Bank of Commerce. The property to be sold so as to net not less than $30,000 profit, clear of all expenses, profit and as much more as may be readily obtained; all to be sold in two years from date of filing plat; title to remain in said Granville M. Cole until he shall consent to make other arrangements, and in the event of there being more than $30,000 obtained in net profits for said ground, said net profits to be equally divided between G. M. Cole and T. J. Green; the management to be left with T. J. Green."

It was admitted by both parties that there had been some indefinite conversations and negotations, in reference to the sale of this property, prior to the sub-

mission of this proposition, but there was, it was agreed by both, none afterward. Both agreed that the previous negotiations did not result in an agreement. It is perfectly clear from plaintiff's own testimony, by which he is bound, that, if an agreement was ever reached, it was embodied in this writing.

As will be seen, plaintiff testified positively and unequivocally that this was the agreement, and as positively that defendant accepted it. On the other hand defendant testified as positively that the proposition was handed him by plaintiff as he was leaving for his home in Illinois, and he never read it, or knew its contents, until after he reached home. He testified as positively also that no agreement was ever reached. No other witness testified on the subject. The form of the memorandum was a circumstance, or fact, very strongly corroborative of the evidence of defendant.

It was agreed that this memorandum was made in the early part of July, 1885. After that, and during the months of July, August and September, 1885, a number of letters and telegrams passed between these parties. Some of these were corroborative of the evidence of plaintiff that a contract between the parties had been agreed upon. These letters show very conclusively that defendant looked to plaintiff to have the land platted and prepared for sale. On August 14, defendant in one of his letters asked, "Do you think we can sell any lots this fall?" On the other hand, on July 20 plaintiff telegraphed defendant to know if he would take $30,000 for the property and pay him a commission of $750. On October 5 plaintiff wrote, "Let me know if you will take $5,000 cash, $5,000 in one, two, three, four and five years at 7 per cent. with privilege of releasing on payment of $1,000 a proportionate amount of ground. I have no offer but think I could make such a deal. I would rather continue on the

terms we agreed on with you, namely: $30,000 to be paid you out of the first sale; I to pay 8 per cent. on $15,000; and then to take half of the net profits over $30,000." The next previous letter from him was dated September 11.

Defendant did not reply to this letter. He soon thereafter went to Kansas City, and, without consulting with plaintiff, sold the entire property for $50,000. The evidence conclusively establishes one fact, namely: if an agreement was ever made, its terms must be looked for in the written proposition. I may be proper to say here that this proposition was not put in evidence on the first trial and was not in the record on the former appeal.

It appears that the evidence of the two witnesses as to whether the proposition was accepted, was irreconcilably contradictory. The truth must be drawn from the subsequent acts and declarations of the parties and all the circumstances.

The case was tried to the court without a jury. At request of plaintiff the court gave the following declaration of law:

"The court, sitting as a jury, declares the law to be, that, if the court believes from the evidence that in July, 1885, the defendant, G. M. Cole, entered into a contract with the plaintiffs to put on the market and sell for him the real estate described in the petition herein, on the following terms, viz.: That the plaintiffs were to have said real estate surveyed and replatted in small tracts or lots, put into a condition to sell, to take charge of the sale thereof,, and to sell the said real estate as the same should be replatted; that out of the proceeds of said sale or sales there was to be paid, first, the necessary expenses attending said survey, replatting of said ground into condition for sale; then, next, there was to be paid to said defendant the sum of $30,000,

and interest on $15,000 thereof at the rate of eight per cent. per annum from the date aforesaid, until said $30,000 should be paid; then the balance of the proceeds arising from said sale was to be equally divided between the plaintiffs and the defendant; and that the plaintiffs, under and in pursuance of said contract, and under the direction of the defendant proceed to perform their part of the contract, and did comply with the same on their part by having the said real estate surveyed and platted and the necessary work done on the roads bordering on it, the weeds cut from it and the ground put into good condition for the sale of lots,. and thereby made said real estate more marketable; and that thereafter said defendant failed and refused to carry out said contract on his part, and did, on or about January 2, 1886, sell all of said real estate, and by a good and sufficient warranty deed convey the same to the Troost Avenue Investment Company, and thereby rendered it impossible for the plaintiffs to go on and comply with said agreement on their part, and that the plaintiffs were always ready and willing to carry out said agreement on their part, then the finding and judgment of the court must be for the plaintiffs.''

At the request of defendant the court gave these three declarations of law:

"2. The burden of proof is on plaintiffs, and, unless the court shall believe from the evidence that the agreement declared on was entered into by the parties, the plaintiffs can not recover.

"3. If there was an agreement entered into concerning the Troost Avenue property, on the terms stated in the paper read in evidence, and by which the profits of the sale of the property were to be divided between T. J. Green and the defendant, then plaintiff can not recover under the petition in this case.

"4. If plaintiff T. J. Green prepared the paper which was read in evidence and submitted the same to the defendant and he agreed to its terms, and was to execute it and return it to plaintiffs, or was to draw a contract embodying the terms of said paper and execute it, then such agreement superseded any previous arrangement or verbal agreement touching the disposition of the Troost Avenue property, if there was one."

Upon the evidence and these declarations of law the court found for the plaintiff. It was thus necessarily found that the contract was not on the terms stated in the written proposition, but that the terms were as charged in the petition. Under the declarations of law, if the finding had been different on this question, the judgment should have been for defendants. This is clear. It is equally clear that this necessary finding was contrary to the unquestioned evidence.

But it is insisted that the difference between the contract as declared upon in the petition and found by the court, and that which the evidence tended to prove, was so slight that the variance was wholly immaterial and could not have changed the result. To this claim we can not give our assent.

It will be seen by comparison that the contract alleged and the one the evidence tended to prove, were substantially different in some of their material terms. In the former, nothing whatever was said about allowing a commission of one dollar per front foot. This item alone may have made a difference of several thousand dollars in favor of one or the other of the parties. This was a matter of substance. The written memorandum contemplates a sale, either in bulk or after subdivision into lots, and puts the management entirely in the hands of plaintiff. In these particulars we think the written proposition differs substantially from the contract sued upon.

As has been said, the truth can only be found under the circumstances in evidence. The evidence of each witness stands unimpeached, except by that of the other and the facts and circumstances. A most potent fact, corroborative of the evidence of defendant is, that the memorandum was put in the form of a proposition. The parties were together talking the matter over, and immediately before the conference was closed, this paper was drawn up by plaintiff. He was a real estate agent and was familiar with the forms of contracts. A jury might well infer from the form in which the paper was written that no agreement had then been reached. Now, when the court found, as he might have done, that this proposition was not agreed to or accepted, and was not the one made by the parties, the probative force flowing from the form of the memorandum was entirely eliminated and the credibility of defendant's testimony was thereby greatly weakened. A jury might likewise have inferred that the letters were written by the parties and the slight services performed by plaintiffs were in view of a pending proposition, which it was expected would be accepted. It will be thus seen that the probative force of these letters and acts also would be much greater in the way of corroborating the testimony of plaintiff under the theory that a contract had been made different from the written memorandum.

In view of the manifestly erroneous finding of the court, the material difference between the contract made, if one was made, and the one found by the court to have been made, and the exclusion of facts and circumstances tending to prove plaintiffs' theory of the case, and to corroborate his evidence, we must hold that prejudicial error was committed in giving plaintiffs' declaration of law.

We do not wish to be understood as basing this conclusion on technical rules of pleading or of variance

between the allegation and the proof. If the evidence
had tended to prove the contract as charged in the
petition, the variance may not have been fatal after ver-
dict. We place our conclusion on the broad and sub-
stantial ground that the issues were tried upon an
erroneous theory and the finding of facts was without
evidence to support it, and we hold that justice and
fairness demands that there should be a retrial. The
only issue to be tried on this branch of the case was
whether the proposition made by plaintiff was accepted
by defendant. The petition should count upon that
agreement, and plaintiff could only recover on proof
of an acceptance.

II. The written proposition allows two years to
plaintiff in which to make sale of the property. The
evidence tended to prove that he performed some ser-
vice under the contract in having the land prepared
for sale. Under these circumstances, and without
other cause, defendant had no right to revoke the
authority of plaintiffs. The sale of the land by defend-
ant, while the contract was in force, put it out of the
power of plaintiffs to perform their part of it, and was
a breach of the agreement, for which they are entitled
to recover damages. *Glover v. Henderson*, 120 Mo. 367.

III. On the measure of damages the court declared
that "the proper measure of damages is the profit, if
any, which it appears from the evidence would have
resulted to them, had they been allowed to complete
their contract with defendant, and the land had been
sold by them under the contract." We find no fault in
this declaration of law as applied to the facts in this
case. Defendant himself sold the property for $50,000.
The net profit realized above $30,000 can be easily
ascertained.

We agree to what was said by BARCLAY, J., in an
opinion filed in the first division: "Had plaintiffs

effected the same sale at that figure, their proper compensation would have been a mere matter of easy computation under the agreement. The fact that defendant made the sale, instead of plaintiffs as his agents, certainly can not diminish the extent of their lawful claim for damages. The terms of the contract and the fact of the sale take the estimate of plaintiff's loss out of the domain of speculation, and fix with certainty the extent of the gain prevented by the defendant's breach of the agreement. Where the profit to result from such a transaction is certain and definite in amount, and its loss is the necessary and direct result of the breach of contract, there can be no substantial doubt that it constitutes a just and legal standard of recovery." Citing *Moses v. Bierling*, 31 N. Y. 462; *Durkee v. Gunn*, 41 Kan. 496. Judgment reversed and cause remanded. GANTT, SHERWOOD and BURGESS, JJ., concur. BRACE, C. J., BARCLAY and ROBINSON, JJ., dissent.

BARCLAY, J. (*dissenting*).—This is the second appeal in this cause; the first is reported, 103 Mo. 70. The present appeal was assigned to the first division where a decision was announced affirming the judgment (24 S. W. Rep. 1058). Afterwards a rehearing was granted. Upon the rehearing the cause was transferred to the court *in banc*, the judges of the division being equally divided in opinion.

There has been no disagreement on the points touched by the decision reached in the twenty-fourth Southwestern Reporter, except as to the point mentioned in the first paragraph of that decision. All the other assignments of error, the divisional judges agreed, were groundless; and that is the view also taken by the court *in banc*.

There remains, therefore, no need to discuss at this time, any other phase of the case than that which my learned brother MACFARLANE, in the foregoing opin-

ion, has condemned as exhibiting a fatal error. This supposed error is in substance that "plaintiffs were permitted to recover upon an alleged agreement on which they had not sued" (to quote the charge as contained in the brief of defendant's counsel).

We shall examine the merits of this assignment of error from several standpoints. But before doing so, its real value will be made more apparent if we place the allegations of the petition, in regard to the terms of agreement, by the side of the written memorandum, which is said to fall fatally short of supporting those allegations. (We will italicize the parts of the memorandum which are thought to show a different agreement from that stated in the pleading.)

**CONTRACT ALLEGED.**

"The plaintiffs were to have said real estate surveyed and replatted in small tracts or lots, put into a condition to sell, to take charge of the sale thereof, and to sell the said real estate as the same should be replatted; that, out of the proceeds of said sale, or sales, there were to be paid, first, the necessary expenses attending said survey, replatting and putting of said ground into condition for sale; then, next, there was to be paid to the said defendant the sum of $30,000 and interest on $15,000 thereof, at the rate of eight per cent. per annum from the date aforesaid until said $30,000 should be paid; then the balance of the proceeds arising from said sale was to be equally divided between the plaintiffs and the defendant."

**THE MEMORANDUM.**

"I will handle the Troost Ave. tract on the following terms: Thirty thousand dollars to be paid in cash or first mortgage notes secured on the property, and to be paid out of the first sales made *after commission of one dollar per front foot is paid.* All notes to bear interest at not less than eight per cent., payable semi-annually, without G. M. Cole's written consent, payable one, two, three, four and five years from date, at the Bank of Commerce. The property to be sold so as to net not less than $30,000 profit clear of all expenses, profit and as much more as may be readily obtained; all to be sold in two years from date of filing plat; title to remain in said Granville M. Cole until he shall consent to make other arrangements, and in the event of there being more than $30,000 obtained in net profits for said ground, said net profits to be equally divided between G. M. Cole and T. J. Green; *the management to be left with T. J. Green.*"

One of the plaintiffs testified to a verbal agreement with the defendant, substantially to the effect stated in the petition. Upon cross-examination of that witness, the pencil memorandum, above quoted, was produced by the defendant. It was unsigned by anyone. Plaintiff admitted that he wrote it, after the verbal contract had been closed, and gave it to defendant, intending to have a written agreement made; but defendant, being in a hurry at the time, did not sign it, promising to send a signed copy later to plaintiff (as has been fully described by our brother MACFARLANE).

Plaintiff T. J. Green repeated the substance of that statement in various forms.

The contention now is (and it has found favor with a majority of our number) that, because he thus stated that the memorandum was agreed upon, plaintiffs can not sustain a judgment on the contract alleged in the petition.

I. Let us first concede (for the argument) the full claim advanced as to the so-called "failure of proof." That is to say, let us assume that the plaintiffs' testimony tends to prove a contract in the language of the memorandum, and that plaintiffs got a verdict upon the contract stated in the petition.

The difference (so viewed) is simply this: That plaintiffs established an agreement containing a stipulation to pay a "commission of one dollar per front foot," in addition to the substance of the other terms of the agreement alleged in the petition (with one supposed exception, to be noted later).

Such a state of the case is thought by some of our brethren to disclose a failure of proof; one of those fatal blemishes demanding a reversal of the judgment, and all the consequences that follow such an order.

Just at this point it certainly would be well to

turn back to some elemental rules of pleading and practice, applicable to these facts.

The common law system required a pleader to state no more of a contract than he needed to base his recovery upon.

If he proved the agreement alleged, he could recover, though his proof might disclose that there were other terms of agreement (whether written or oral) which he had wholly omitted to plead.

In 1812 it was said by MANSFIELD, J., that *"in assumpsit*, it is sufficient if the declaration shows so much of the terms beneficial to the plaintiff in a contract, as comprehends the point for the failure of which the plaintiff sues." *Cotterill v. Cuff* (1812), 4 Taunt. 285.

The rule was not peculiar to assumpsit, but applied to all actions upon contract; and Mr. Chitty in his great work on pleading, after announcing the rule, added that "the statement of additional matter would be needless prolixity." 1 Chitty on Pleadings [16 Am. Ed.], 1879, *p. 311.

If any further authority for so obvious a proposition be required, it may be found in 1 Saunders' Pleading and Evidence [5 Am. Ed.], 1851, *p. 200.

In the case at bar, plaintiffs make no demand for any "commission of one dollar per front foot." They do not rely in any way on that part of the terms of the memorandum. Hence, the worst that can be said of their case is that it proved an additional stipulation (on which they make no claim) beyond the terms on which they plant their right of recovery in the petition, and in their instruction which conforms to the petition.

To defeat them now, on account of such a redundancy of proof, by treating it as a failure of proof, is to breathe new life, at this day, into a technicality so barren that the special pleaders of the common law

had discarded it a hundred years ago, if, indeed, it ever had a place in English jurisprudence.

And such a ruling is supposed to expound the meaning of a modern code of procedure sometimes called "reformed."

The rule that renders it unnecessary to allege any more of a contract than the pleader intends to assert, in order to obtain the particular relief he asks, has been supposed for many years to be the unquestioned law of Missouri. It was stated in *Brooks v. Ancell* (1872), 51 Mo. 178, followed in *Comstock v. Davis* (1873), 51 Mo. 569, and again laid down with great clearness in *Moore v. Mountcastle* (1880), 72 Mo. 605.

It is also approved by one of the earliest commentators on the reformed code. Moak's Van Santvoord's Pleadings [3 Ed.], *p. 222.

It should have greater force now as a guide to judicial action than it had at the common law. For, under our present code, "only the substantive facts necessary to constitute the cause of action" should be stated (R. S. 1889, sec. 2055), and irrelevant matter is to be discarded (R. S. 1889, sec. 2057).

If the only objection to plaintiffs' judgment was that the agreement, which they proved, contained a stipulation for a commission of one dollar per front foot, not mentioned in the petition when describing the contract, or in the plaintiffs' instruction (conforming to the petition), it should be held by this court that the objection is wholly without substance, where the contract, as alleged, was proved in other respects.

II.    Another objection of the same general class as that above discussed is to the effect that the memorandum "contemplates a sale either in bulk or after subdivision into lots, and puts the management entirely in the hands of plaintiff." It is claimed that the contract alleged in the petition does not so provide.

The petition alleged "that defendant entered into a contract with the plaintiffs to put on the market and sell for him the said real estate," etc.; and (further along) that plaintiffs were "to take charge of the sale thereof and to sell the said real estate," etc. The memorandum contemplates that the land was to be platted into lots; for it refers to the "date of filing plat;" and its whole tenor sanctions a sale, either in bulk, or by lots.

The other difference mentioned, namely: between "the management" of real estate for the purpose of sale (as recited in the memorandum), and "taking charge of the sale" thereof (as stated in the petition) is too shadowy to sustain any extended comment. The whole transaction, as described in the petition, as well as in the evidence, carries the plain implication that plaintiffs were to manage the sale of the defendant's land or lots for him, for the purpose of mutual profit.

This variance is referred to by our learned colleague as being substantial. To us it only seems important as indicating the closeness of the scrutiny to which the record on this appeal has been subjected. We shall make no further reference to it, but devote our attention to the other point of criticism.

III. Our learned brother has expressed the opinion, in reference to the agreement for a commission of one dollar per foot (as contained in the memorandum), that, "this item alone may have made a difference of several thousand dollars in favor of one or other of the parties;" and, hence, that it is "a matter of substance" that the petition made no allusion to that part of the agreement.

This leads us to consider exactly what this supposed omission in the petition (and in the plaintiffs' instruction) amounts to.

The above quoted remark warrants the very just

inference that if it could be shown that the agreement for a commission had no possible bearing on the result of the present litigation, it ought to be discarded, and held insufficient to justify a reversal. We believe that that showing can be made, if it does not appear from what has already been said.

In the course of the testimony of one of the plaintiffs, he explained that the commission of one dollar per front foot (mentioned in the memorandum) was to have been a part of the expenses, as compensation to subagents, if the sale had been made by lots (which it never was). He testified (without objection) on this point:

"*Q.* Was there ever a word about you selling it on commission for a dollar a foot? *A.* No, sir.

"*Q.* Is there anything in this written contract which you prepared about a dollar a foot? *A.* Yes, sir.

"*Q.* How did it get in there? *A.* In this way: I explained to Mr. Cole that I usually had an agent to assist me in selling lots, and that when he made a sale one dollar a foot on the amount sold would go to him. That is mentioned as a charge against the property over and above the thirty thousand dollars."

In giving the terms of the first verbal agreement, the same plaintiff testified that the profits over the price of $30,000 were to be computed "after expenses were paid." Later, he spoke of the proceeds "over and above $30,000 and expenses;" and, again, of the "net price."

Under the terms of the memorandum the commission to subagents would have been an item of expense to be deducted from the gross proceeds, if plaintiffs had sold the land by lots after platting it. This, plaintiffs were not allowed by defendant to do, because the latter never returned the plat sent for his approval, and

later sold the whole tract outright, without the intervention of plaintiffs.

Their present action is based on a breach of the contract to allow them to sell the land for defendant, within the two years agreed upon for that purpose.

Plaintiffs have made no claim in this case for any commission of one dollar per front foot. Their instruction on the measure of recovery contains no allusion to it. That commission was but an expected expense, never incurred.

It was a charge which plaintiffs were authorized to make if the sale had been made by them in the mode they intended; but that sale never happened.

Can it be possible that they must now fail to recover for the damages actually sustained under the contract, because, in stating their case formally, they omitted to refer to a term of the contract which circumstances have practically eliminated from it? They are entitled to no commission per front foot, under their own evidence (above quoted), explaining the memorandum; and they are no more obliged to refer to that provision of the contract than they would be to any other provision which they do not seek to base a recovery upon. The rule of law stated in the first paragraph above is conclusive of that subject. But stronger yet to the same effect, on the case as it now stands, is the specific declaration of our own code of procedure, as applied to this particular point, that no judgment shall be reversed for any error which shall not affect the substantial rights of the adverse party (R. S. 1889, secs. 2100, 2303).

Would it conform to the demand of substantial justice to send this cause back for a retrial in order to compel plaintiffs to amend their petition by adding another phrase of description of the contract sued upon,

notwithstanding plaintiffs can not, and do not, make any sort of demand on account of the new matter they will be compelled to add?

The evidence of plaintiff (quoted above in this paragraph) tends to show that the verbal contract it describes provided for a credit to plaintiffs for the commission of one dollar per front foot, as part of the expenses of the sale by lots (had the sale been so made). In that particular the plaintiffs' evidence makes clear what is meant by the somewhat obscure stipulation on that point in the memorandum.

Now we ask, did the trial court err in failing to put into the instruction, authorizing plaintiffs' recovery, a call for a term of the contract, which term plaintiffs did not sue upon, and make no claim upon? We answer most emphatically, no.

Certainly the learned circuit judge did not err in that particular if the proposition stated in the first paragraph of this opinion is sound, as we believe it to be.

IV. Nor did he err if the commission per front foot did not figure in any manner as an item of damages in plaintiffs' judgment.

All of our brethren have approved the rule laid down by the trial court as to the right of plaintiffs to recover the profits they would have realized on a sale of the land for $50,000, the price actually received by defendant. He made that sale, January 2, 1886. The only item of expense shown to have been incurred by defendant was for "platting" the land. It was $60. Giving defendant credit for that sum, and for $30,000, the price he was to get for the land (as stated in the opening lines of the memorandum) would leave the net profits (over the last named figures) $19,940; of which plaintiffs' share (one half) would be $9,970.

The verdict was for $9,970, July 2, 1891. The petition was filed, January 15, 1886.

The date of service of process is not given in this record. Plaintiffs were entitled, under sections 2948 and 5972 (R. S. 1889), to interest at six per cent. per annum from the day of service. But it appears that defendant filed a demurrer, April 17, 1891, and the interest on $9,970 from that date to the verdict plaintiffs had a right to recover, under the court's finding on the facts.

Plaintiffs were, no doubt, entitled to interest from a much earlier period, since the record refers to a prior trial, without giving its date. But, taking the present record as it stands, they were at least entitled (under the finding for them on the merits, and the rule of recovery affirmed in this court) to the judgment they obtained, granting that the memorandum was the contract, and wholly discarding any allowance to plaintiffs of a commission per front foot.

From these cold facts, it is very clear to us, with all respect due to our learned brother, that he fell into grave error in holding (with reference to this commission) that "this item may have made a difference of several thousand dollars in favor of one or the other of the parties." It is obvious from the amount of the finding that the item was not included in the judgment, even if plaintiffs might have claimed it.

The fact that plaintiffs were entitled to recover at least as much as was awarded them, without bringing in that item, shows that the omission to refer in the petition (or in plaintiffs' instruction) to that feature of the agreement was a wholly harmless error, if an error at all.

It was held as early as *Lavender v. McCloud* (1857), 26 Mo. 65, that where an instruction was erroneous, which bore on a question of damages, yet, if the verdict gave no such damages, the error would be disregarded, because "it did not injuriously affect the defendant,"

The express terms of the statute governing proceedings in this court forbid the reversal of a judgment, unless the alleged error of the trial court materially affected the merits.   (R. S. 1889, sec. 2303.)

From the above we believe it clearly appears that, if the pencil memorandum is to be taken as the basis of the recovery, the finding shows that the court did not give plaintiffs any allowance for a commission per front foot.

Not only, however, does the verdict show no prejudice to defendant in the conclusion reached by the trial court (if it be now assumed that the memorandum was the true contract), but the fact that the case was submitted on the agreement stated in the petition, without referring to the commission per front foot (as called for by the memorandum), was a clear and positive benefit to the defendant.

There is one important difference in the terms of the contract counted on by the petition, and the terms of the memorandum.   It is a difference that has as yet received no notice.   But it should not be overlooked.

The petition alleges one feature of the agreement to be that defendant was to have credit for interest at eight per cent. per annum on $15,000 of the selling price, from the date of the agreement sued on, until the net $30,000 (the purchase price) should be paid.

No such stipulation is in the pencil memorandum.

The alleged agreement was made early in July, 1885, and the defendant's sale, January 2, 1886.   So the defendant's credit on that account (at eight per cent.) would be about $600.

The court submitted the cause on an instruction which gave defendant the benefit of that interest clause of the contract, in accordance with plaintiffs' account of the first verbal agreement.   That phase of the contract was much more favorable to defendant than the

memorandum, touching the amount of the purchase price.

If to these facts it be added (as already shown) that the judgment includes no damages on account of that part of the memorandum which refers to the commission per front foot, we should then very much like to have someone point out, if possible, how defendant was in any respect prejudiced by the action of the court in submitting the cause on the agreement recited in the petition, in view of the finding for plaintiffs for only $9,970 damages? How can it be said, upon those facts, that the mode of submitting the cause was injurious to defendant by omitting a reference to the commission per front foot? That omission was, at worst, harmless; and, on the peculiar facts of this case, it may have been positively advantageous to the defendant.

It is the duty of the court, under our code of procedure, to look closely at the actual results of the circuit rulings complained of, and where they appear to involve no substantial injury to the complaining party, the judgment should not be disturbed.

V. The concession, as to the effect of the evidence in regard to the memorandum, on which much of the foregoing commentary is based, goes far beyond the demands of the law on the subject.

The trial court was not bound to accept the memorandum as the whole agreement between these parties. The memorandum was not signed by either party. Defendant repudiated it, as well as any agreement whatsoever on his part.

Standing alone, the memorandum amounted to nothing. It was a mere proposal. It was necessary for plaintiffs to show that defendant agreed to it, in order to make its terms binding on defendant.

No question as to the statute of frauds is presented by the appeal.

Was it not competent for plaintiffs to show what defendant in fact agreed to, verbally?

The rule of law in this state in relation to an agreement resting partly on written and partly on verbal evidence is this:

"Where there is but a memorandum of a contract, and it does not purport to be a complete expression of the entire contract, or where a part only of the contract is reduced to writing, the matter omitted may be supplied by parol evidence." *State ex rel. v. Hoshaw* (1889), 98 Mo. 358.

The same idea was expressed at a much earlier date in *Rollins v. Claybrook* (1856), 22 Mo. 405; and could be supported by many more precedents, if necessary.

The contract charged to have been actually made rested partly on defendant's verbal agreement.

Plaintiff's testimony tended to show a complete oral agreement before the memorandum was drawn or delivered. The memorandum and the oral evidence are not in conflict. The one merely adds terms to the other as has been already shown. It was competent for the parties to add to the terms of either agreement in that manner. *Edwards v. Goldsmith* (1851), 16 Pa. St. 43.

The very last written statement of the substance of the agreement is contained in plaintiff's letter to defendant, October 5, 1885 (quoted in brother MAC-FARLANE's opinion). The words "net profits" in that letter accord with the plaintiff's testimony that the commission per front foot for the benefit of subagents, was a part of the contemplated expenses of the scheme; for there is no other language in the letter that can be construed to refer to such a commission.

On the written and oral evidence we think there

was abundant proof of that part of the contract which the petition set out and relied upon. As we have already tried to show (in the first paragraph above), it is wholly immaterial that other stipulations (on which plaintiffs make no demand) were also proved by this evidence.

The first instruction given for plaintiffs only required a finding of the terms of agreement counted on.

The second instruction given for defendant was in entire accord with the plaintiff's first instruction.

The defendant's third instruction was much too favorable to him, because it appears to require the proof of the contract to go no further than the allegations, and hence ignores the rule of pleading discussed in the first paragraph of this opinion. In that respect the third instruction was erroneous; but as its error was in favor of defendant he can not complain of the court's action in that regard. *Flowers v. Helm* (1860), 29 Mo. 324; *Reardon v. Railroad* (1893), 114 Mo. 384. Even if that error (made at his request) produced a conflict in the instructions (which, however, we do not say it did), such an error could not be correctly held to be ground for reversing the judgment. *Alexander v. Clark* (1884), 83 Mo. 481; *Schmitz v. Railroad* (1893), 119 Mo. 275.

The case was tried without a jury before a judge of long experience. The only substantial issue was whether, in fact, a completed and closed agreement had been made, as plaintiffs claimed, or whether the parties never got beyond mere negotiations for a contract, as defendant claimed.

On that issue the court held for plaintiffs; and, as trier of the facts, found that the evidence sustained an agreement to the effect stated in the petition. The court (as the verdict shows) allowed plaintiffs no damages for any commission of one dollar a foot. The

evidence supported the judgment; and we think no substantial ground to disturb it has been pointed out.

VI.   Some other objections to the result in this court could be mentioned; but, as this opinion has already gone to a length far beyond our expectations, we forbear further comment.

No other assignment of error than that discussed in the prevailing opinion is regarded by any member of this court as sufficient for a reversal, and it is, therefore, unnecessary to discuss other points of the appeal; but we refer to the divisional opinion concerning them.

In our opinion the judgment should be affirmed. BRACE, C. J., and ROBINSON, J., concur in this opinion, and join in dissenting from the decision of the majority of the court.