### H. H. McLANE v. E. F. MAURER ET AL.

#### Decided January 8, 1902.

**1.—Contract—Real Estate Agent—Sale of Land—Pleading.**

Where a contract authorizing plaintiffs to sell defendant's lands fixed a minimum price for the lands and provided that an asking price for the several tracts should be agreed on, and plaintiff's petition in an action for breach of the contract alleged that such price was agreed on, this made certain any uncertainty in the contract as to the price to be demanded.

**2.—Same—Measure of Damages for Breach.**

Where plaintiffs were to have for their services in selling the lands one-half the price received in excess of a certain sum, and the petition alleges what they would have realized from the sale, this afforded a sufficient basis for the recovery of damages.

**3.—Same—Contract Extended—Evidence.**

In an action for breach of a contract which had been renewed and extended in time, evidence of plaintiff's activity under the original contract could not have been to defendant's injury.

**4.—Same—Interlineations and Erasures.**

Where there are interlineations and erasures in the contract sued on, testimony to explain them was admissible.

**5.—Same—Evidence—Hearsay.**

Testimony that one H. had said to third parties that he was also an agent of defendant to sell the lands in question was hearsay, but plaintiffs were entitled to show that defendant, knowing that H. was in their employ, without their knowledge employed him at the same time to sell for himself, thereby interfering with plaintiffs' sales.

**6.—Same—Evidence.**

Plaintiffs were entitled to show by their witnesses what was the demand for the lands during the time of the contract and negotiations to purchase them, as tending to establish that they would have been sold by them but for defendant's breach of the contract.

**7.—Same—Owner Reserving Right to Sell Also.**

That the contract provided that the owner might himself sell all or any part of the land without compensation to plaintiffs, and that it was possible for defendant to have sold the land during the time limit of the contract, did not authorize him to abrogate the contract before the date of its limit and after plaintiffs' efforts had excited an active demand for the lands.

**8.—Same—Measure of Damages—Basis of Estimate.**

Where there was no evidence that the remaining lands would have been sold

by plaintiffs at a higher average price than that obtained for the lands they did sell, such average must form the basis of calculation as to the remaining land, and an estimate on a higher basis is error requiring a remittitur in this case.

**9.—Same—Revocation Not Warranted.**

Where the contract, when properly construed, did not contemplate that the land should all be surveyed and subdivided before sales were made, the fact that it had not all been so surveyed did not authorize defendant to revoke the contract.

Appeal from Bexar. Tried below before Hon. S. J. Brooks.

*T. J. McMinn* and *Ball & Fuller,* for appellant.

*Denman, Franklin & McGown,* for appellees.

FLY, Associate Justice.—This suit was instituted by E. F. Maurer and T. W. Woodruff to recover damages in the sum of $17,707.50, alleged to have accrued by reason of the breach of a certain contract under the terms of which a certain tract of land was placed in the hands of plaintiffs by defendant for sale. The trial resulted in a verdict and judgment for appellees in the sum of $13,144.

The contract upon which the suit is based provided that appellees should have the right to sell 7000 acres of land owned by appellant in Karnes County, Texas, at a sum not less than $8 per acre for upland, and $12 per acre for valley land; that appellees were "to devote their business, energies, time, and attention to the hunting up of purchasers, visiting other and distant localities for that purpose," and that all expenses of every kind should be paid by them. The compensation was fixed, in case less than the whole was sold, at one-half of the price obtained in excess of $8 an acre, but if the while was sold in a body at $8 an acre appellees were to receive 5 per cent of the amount obtained. It was also provided that appellees should receive 5 per cent of the purchase price whenever a sale was made, which should be deducted from their portion of the purchase money in excess of $8 an acre. The sales were to be made at not less than one-fourth cash, the deferred payments to be secured by vendor's liens. It was provided that appellant should have the right to sell the whole or any portion of the land without compensating appellees for any interest therein, and that the value of certain improvements should be deduced from any amounts in which appellees might have an interest. The time limit fixed for the sale of one-half the land was January 1, 1899, and for the other half January 1, 1900. These times were afterwards extended to 1901 and 1902 by an agreement in writing indorsed on the original contract. The date of this indorsement was June 21, 1900, and in it was the provision that with the exception of certain immaterial erasures and additions, the parties should be "bound in all things by the terms and conditions of the contract as originally entered into."

The petition set forth full compliance with the terms of the contract

on the part of appellees and a breach üpon the part of appellant after they had sold 1988 4-10 acres of the land and had contracted for the sale of the other half, and we do not think it was subject to a general demurrer. It is alleged that under the terms of the contract the parties had fixed the prices that should be demanded for the land, and this made certain any uncertainty in the contract as to what the prices to be demanded should be.

None of the special exceptions was well taken, and each was properly overruled. The new contract was but an extension and continuation of the original contract, and it was proper to declare on them both.

The allegations as to what appellees would have realized from the sale of the land remaining unsold at the time of the breach of the contract formed a sufficient basis for the recovery of damages. It may be a difficult matter to establish what the damages will be, but that burden is on the plaintiff, and if he can make it appear reasonably certain that he was damaged and the probable amount of such damages he can recover. Fraser v. Mining Co., 9 Texas Civ. App., 210; Joske v. Pleasants, 39 S. W. Rep., 586. The rule is thus clearly stated in an Oregon case, Blagen v. Thompson, 31 Pacific Reporter, 647, and copied in the first case above cited: "The difficulty in the determination of the question thus presented lies not so much in the ascertainment of the law of the subject as in its application to the facts of the particular case. The broad general rule in such cases is that the plaintiff may recover such damages, including gains prevented, as well as losses sustained, as may reasonably be supposed to have been within the contemplation of both parties at the time of making the contract, as the proximate and natural consequences of a breach by defendant; and in determining what may reasonably be supposed to have been within the contemplation of the parties as a natural consequence of a breach, all the facts surrounding the execution of the contract known to both parties may be considered, even if these be such as would not necessarily enter into it, if known to the defendant."

The only question that could arise in the matter of the benefits that would have accrued had the contract not been breached, would be as to the proof. If appellees could make it appear reasonably certain that they would have sold the whole of the land, but for the interference of appellant, they would be entitled to the interest in what they could show the land would have sold for.

The charge of the court contains a full and explicit presentation to the jury of every issue raised by the pleadings and evidence, and the special charges requested by appellant were properly refused. The jury were confined in their consideration of the testimony to the labor put forth and the expenses incurred after the renewal of the contract on June 21, 1900, and instructed them to ascertain the total amount that would have been realized prior to October 30, 1900, when the contract was breached, and those that would have been made thereafter before January 1, 1902, and from this total to deduct what all the lands would

have brought at $8 an acre and the sum of $8000 for the improvements, and to return a verdict for one-half of what remained less the expenses that would reasonably have arisen in selling the land and less any sums paid by appellant to appellees. This, we think, was the proper measure of damages. All other phases of the case suggested by the allegations and evidence were also presented to the jury.

The fifteenth assignment of error complains of the admission of evidence of efforts put forth by appellees prior to lapse of the contract by its time limit on January 1, 1900, and prior to the time of renewal on June 21, 1900. How this testimony if inadmissible could have injured appellant is not made apparent by the assignment of error, various bills of exceptions, or argument of appellant. The issues as submitted by the court could not have been affected in any manner by the evidence. The questions were, had appellant breached the contract and had appellees been injured by the breach? Under the terms of the contract they had until January 1, 1901, to sell one-half the land and until January 1, 1902, to sell the other half, and appellant before the expiration of the time breached the contract and prevented them from selling. That appellant was not dissatisfied with the manner in which appellees had endeavored to effect a sale under the original contract is evidenced by the renewal of the contract, and evidence of their activity in the matter during the life of the original contract could not have injuriously affected the interests of appellant. The charge confined the investigation of the diligence of appellees in effecting sales to the time between June 21, 1900, and October 30, 1900.

The renewal clause affixed to the contract made the latter the new contract, and it was properly admitted in evidence, and when admitted it showed that the clause requiring appellees "to devote their entire time and attention" to the sale of the land was modified by erasing the word "entire" and inserting "business energies," so that the sentence read, "that the said Maurer and Woodruff are to devote their business energies, time and attention" to the business in hand. It was contended by appellant that appellees had breached the contract by not devoting their "entire time and attention," and it was proper to show that the contract did not so provide, and that it was changed as above indicated so that appellees would not be bound to give their entire time and attention to the subject matter of the contract. The testimony did not change the contract; it merely explained an erasure and interlineation in it and showed the intention of the parties, and was admissible.

The evidence as to what W. J. Hall said to witnesses about being an agent of appellant to sell the land described in the contract was properly excluded. Under the terms of the contract it was not contemplated that appellant should appoint other agents than appellees to sell the land, and if it had been, and it was necessary to prove the appointment of other agents, it could not be done by the declarations of such agents to third parties. Hall it seems had been employed by appellees to assist them in getting purchasers for the land, and while so employed he also

entered the employment of appellant to sell the land, and it was ad-· missible to allow Woodruff, one of the appellees, to testify that he knew nothing about such employment of Hall by appellant and that Hall told him nothing about it.  It was also admissible to prove that appellees had told appellant that Hall had been employed by them to assist in the sale of the land.   It brought home to appellant the fact that Hall was an agent of appellees, and tended to show that by his subsequent conduct in employing Hall he was endeavoring to interfere with them in executing their contract, and thereby bringing about a failure on their part.   To say that appellant could knowingly hire the servants of appellees to work for him, and thereby break down appellees in their efforts to sell the land, would be to sustain conduct that can not meet with countenance in any court.

It was permissible under the pleadings to show what the demand for land was in the fall of 1900, and what the probable expense would be to sell the land, and as to whether there were any applications for purchase, and it would seem that this could only be done by interrogating witnesses about the several matters.   An estimate of the probable cost of selling the remaining land was not only permissible but necessary to enable the jury to ascertain what the cost would be.   The question as to the negotiations for sale of the land was not leading, and proof that a party had offered $15 an acre for a part of the land was not hearsay. It was the narration of a fact.   The conversation with Mayfield was in the presence of and with appellant and was admissible.   We think that testimony as to negotiations for purchase of the land was permissible as tending to show that the land was in demand and would have probably been sold.

The court properly refused to give the special charges requested.   The law covering the facts was given in the charge of the court.   It was not error to assume that appellant had revoked the agency of appellees. The uncontroverted evidence shows that this was done.   The contract did not require that the whole of the time and attention of appellees should be devoted to the sale of the land, and it was not erroneous to instruct the jury that reasonable diligence in procuring purchasers met the terms of the contract.   It was the duty of the court to construe the language of the contract, and we think its construction correct.

The testimony in this ·case tends to establish that through the efforts of appellees interest had been aroused in the land placed in their hands by appellant, and that numerous purchasers were seeking to obtain a portion of it.   At the time when the land was being rapidly disposed of appellant breached the contract and discharged appellees from his service.   He had, it is true, reserved the right to sell the whole or any portion of the land without compensating appellees for their efforts and expenses, but that harsh and rigorous section of the contract will not be extended so as to give the appellant the right when a demand for the land has been created, by the efforts of the appellees to reap the benefits, without compensation, of their labor.   He might under the terms of his

contract, which were favorable in the highest degree to him, sell any land that he saw proper and not give any compensation to appellees for being the means of providing a customer, provided he did not act in bad faith in obtaining such purchaser, but he can not at will abrogate the contract and profit by his own wrongs in breaching the contract and deprive appellees of the legitimate fruits of their labors. It does not matter, as contended by appellant, that appellees had not devoted their entire time and attention to selling the land; the facts indicate that they were selling it rapidly when they were interfered with by appellant, and render it reasonably certain that, but for such interference, the whole of the land would have been sold within the time limit fixed by the contract. It is possible that appellant might have sold the whole or a portion of the land during that time limit, but that possibility can not relieve him from the full consequences of his unlawful act in abrogating the contract.

While viewing the matter as we do, and holding that the true measure of damages was given in charge to the jury, we are of the opinion that the verdict under the facts is excessive. In their petition appellees claimed, and it was shown by the proof, that the sum of $3307.60 was compensation for the sale of lands already consummated or contracted for before the contract was abrogated, admitting a credit thereon of $956.10 paid by appellant. This would leave the amount $2351.50 due for such sales. It appears that after the sale of the 1988 acres of land there remained 5047 acres of land, as alleged in the petition, 3708 acres of which was valley land and 1339 acres was upland. We gather from the testimony that 661 acres of the 1988 acres sold was upland and brought on an average the sum of $9.25, and the remaining 1327 acres was valley land and brought on an average $12.30 an acre. There is no testimony that establishes that these averages would have been increased on future sales, and they must form the basis for the calculation as to the remaining land. On this basis the 3708 acres of valley land would have brought $45,608.40, and the 1339 acres of upland would have realized $12,385.75, the aggregate sum being $57,994.15. Deducting from this sum $8 an acre, or $40,376, and the $8000 for the improvements, and there remains $9618.15, one-half of which would be $4809.07, from which deduct the $600 estimate for expenses, and there would be left for appellees the sum of $4209.07, which added to the $2351 would give the sum of $6560.07.

We have endeavored to consider every point presented by the numerous assignments of error, and find nothing requiring a reversal if the excessive verdict is cured by a remittitur, and if this is done within ten days the judgment will be affirmed, otherwise it will be reversed and the cause remanded.

*Affirmed on remittitur.*

### ON MOTION FOR REHEARING.

"It is the rule that a plaintiff may recover compensation for any gain which he can make it appear with reasonable certainty the defendant's wrongful act prevented him from acquiring, subject, of course, to the general principles as to remoteness, compensation, etc. His compensation will be measured by the most liberal scale which he can show to be a proper one." Sedg. on Dam., sec. 177. Again the same author says in section 192: "The benefits which would have accrued to plaintiff from a contract broken by the defendant may be recovered, though they are in a certain sense contingent." In the case of Bagley v. Smith, 10 New York, 439, it was held that one partner may maintain an action at law against his copartner for a breach of the articles of copartnership in dissolving before the limited period. In that case an English case was cited approvingly, wherein it was held that where an author failed to furnish a manuscript work he had promised to provide, the plaintiff could recover of him the amount of profit that would probably have been realized. These rules would apply to this case, and when the amount of damages is made reasonably certain by the evidence the plaintiff is entitled to a recovery.

In the first clause of the contract it is provided that the valley land should not be sold for less than $12 an acre, nor any portion of the elevated or upland for less than $8 an acre, and that these minimum prices should not be taken until a reasonable effort has been made to obtain the higher fixed prices. In the first clause of the contract it was also provided that the lands should be platted on a map and surveyed, so that the shape, quantity, and description of each tract should be known, and each tract should be numbered and the price agreed on by the parties to the contract, which should be the asking price. The following clause is also found in the contract: "And it is further expressly understood and agreed that the buildings and improvements on said tract of land are not to be a part when sold of the amount to be divided, but the whole amount for which the same shall be sold shall belong to the said McLane, and so much of said land, to the extent of not less than 200 acres, upon which said buildings and improvements are situated and contiguous thereto shall be reserved to be sold with the said buildings and improvements, and the value of the land alone shall be subject to a division, as above specified, and such land and improvements shall not be sold without the express consent of the said McLane, and the fixing by him of the price of the improvements."

The contention of appellant is that because the evidence established that the ceneral part of the tract had not been classified and priced, and no consent had been given to sell the land reserved with the improvements, the contract was not a completed one, and appellees could only recover 5 per cent on sales actually made or contracted for by them. Appellant assumes that these points did not meet with any considera-

tion at the hands of the court, but they were thoroughly considered in the first instance, and have again been considered, and the court is still of the opinion that the contention is without merit. We do not think that it was ever contemplated by the parties to the contract that although nine-tenths of the land should be sold, appellant could breach the contract, and because the remaining tenth of the land had not been classified and priced, appellees should be entitled to only 5 per cent on the sales. Such, however, would be the legitimate result of the interpretation put upon the contract by appellant. The testimony showed that appellees had surveyed and subdivided over half of the land and were rapidly selling it off, and there can be no strength in the argument that the contract can be breached and nothing but a 5 per cent commission be recovered because the whole of the land had not been surveyed. There is no clause in the contract that contemplates that the whole of the land shall be laid off, platted, and surveyed before any portion of it should be sold, and appellant did not so construe it, because he had time and again indorsed the acts of appellees by executing deeds and appropriating benefits arising from the sale of different tracts of land.

The contract can not be held to be incomplete because a portion of the land had not been classified and priced. Its minimum price had been fixed by the contract, and while it is provided that the prices must be agreed to by all parties, it is clearly contemplated that the minimum price can be taken by appellees after a reasonable effort to get more, for it is provided: "But the minimum price shall not be taken until a reasonable effort has been made to obtain the agreed prices." In other words, the contract gives the least price that can be taken and provides that an "asking price" shall be agreed on, but if after reasonable effort appellees fail to get such asking price, then they can take the minimum price. No complaint was ever made that all the land had not been surveyed and classified, but the excuses made for breaching the contract are on other grounds.

We are of the opinion that if no minimum price had been named and the testimony made it reasonably certain that the remaining land would have been sold but for the breach, appellees are entitled to receive their pro rata on the unsold land as well as on that sold and contracted to be sold.

What has been said does not, we think, apply to the 200 acres reserved from sale with the improvements, and that land together with improvements will be eliminated in arriving at the amount of damages, for if the land and improvements were reserved from sale, as properly contended by appellant, they should not be considered in arriving at the proper sum to be given in the judgment. The basis of calculation would then be 3508 acres of valley land instead of 3708, and 1339 acres of upland. The 3508 acres at $12.30 per acre would be $43,148.40 and the 1339 acres of upland at $9.25 would be $12,385.75, making in the aggregate $55,534.15, from which deduct $8 an acre for $38,776. This

leaves $16,758.15, one-half of which, less $600 expenses, is $7779.07, which added to the $2351 would give the sum of $10,130.07.

Appellees having indicated a willingness to remit the sum required by the court, our former judgment will be amended so as to deduct a sum sufficient to reduce the judgment to the sum above ated, and as reduced will be affirmed.

*ffirmed.*

### ON SECOND MOTION FOR REHEARING.

If the theory of appellant should prevail, appellees might have sold the whole of the land except the 200 acres on which the improvements are situated, and appellant could by refusing to sell that prevent appellees from receiving any compensation except 5 per cent on the sums realized from the sale of the other land. We do not think the contract can be legitimately so construed. It may be that the 200 acres should be included in the estimate, as it was in our original opinion, but it is clear that if they are so included the value of the improvements should not be deducted. They were not included in the estimate of the value of the land, and on a fair estimate should not be deducted. If the 200 acres were included, the damages would be $429.25 in excess of what our judgment gives to appellees.

Since writing our former opinions, our attention has been directed to the case of Wells v. National Life Association of Hartford, 53 Lawyer's Reports Annotated, 1 to 112, which is copiously annotated, and the law bearing on cases of this character is fully discussed. On pages 76 to 78 are found notes peculiarly bearing on contracts for sale of real estate, and which sustain the decision of this court.

The motion is overruled.

*Overruled.*

Writ of error refused.