## CLOE v. ROGERS.

No. 1283.  Opinion Filed January 9, 1912.

(121 Pac. 201.)

1.  **APPEAL AND ERROR**—Record—Case-Made—Loss and Substitu-
tion—Certificate.  Where a case-made is lost, and the substitute
is duly settled and signed by the trial judge, who finds and cer-
tifies that the same is a true, correct, and complete copy of the
original, and this finding is not rebutted, a motion to dismiss on
the ground of lack of proof of authenticity will be denied.

2.  **PRINCIPAL AND AGENT**—Existence of Relation—Revocation of
Agency—Agency Coupled With Interest.  Where an agency is
uncoupled with an interest, it may be revoked by the principal
at will, without liability for damages; but where it is for a fixed
time, and contemplates on the part of the agent the expenditure
of time and money to carry it out, and is accepted and the duties
imposed are entered upon by the agent, and money and time are
expended in the pursuit of the object of the agency, although the
principal has the power to revoke and bring to a termination
the contract, yet he lacks the right of so doing, except upon
the burden of responding to the agent for such damages as he
may suffer by reason thereof.

3.  **SAME**—Mutual Rights and Liabilities—Revocation of Agency—
Measure of Damages.  Where, after plaintiff has entered upon
his duties, and expended time and money in carrying out a con-
tract of agency for the sale of lots in a town-site addition,
wherein his compensation and gain was to be derived from profits

made in the venture, the defendant, without just cause, revokes the agency established, plaintiff is entitled to recover as damages the profits which he may be able to show he would have made under the contract, where the same are shown to have been in the contemplation of both parties, at the time of the making of the contract, as the natural and proximate consequence of its breach by the defendant, and in determining the same, and the amount recoverable, all facts relating to the subject-matter of the contract and concerning the execution thereof known to both parties, and all facts which would reasonably tend to make certain the amount of injury inflicted, are admissible; the jury, however, being instructed and cautioned in coming to its conclusion not to deal in speculative conjectures in drawing its deductions from the evidence offered.

(Syllabus by the Court.)

*Error from District Court, Delaware County;*
*John H. Pitchford, Judge.*

Action by W. H. Cloe against T. J. Rogers. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

*Ad V. Coppedge, Rice & Rice,* and *McGill & Lindsey,* for plaintiff in error.

*J. G. Austin* and *W. H. Kornegay,* for defendant in error.

DUNN, J. This case presents error from the district court of Delaware county. Counsel for defendant in error have presented and insist upon a motion to dismiss the appeal because of alleged insufficiency of the case-made, which grows out of the fact that the original case-made was lost while in the hands of an express company, charged with the duty of transmitting it to the trial judge for the purpose of settlement and signing. The facts with reference thereto were duly submitted to the trial judge, who specifically finds thereon that "the original case-made, and the said copy to me now presented, and the amendment thereto, have been duly served in due time, and the amendment thereto duly suggested and was duly agreed to be submitted to me by the parties to said cause for settlement and signing, as required by law," and that "the foregoing, which is offered as a copy and substitute for said original case-made, is a true, correct, and complete copy of the original case-made," etc. Under these circumstances,

and finding that the conclusion reached by the trial court is not rebutted by the record, the motion to dismiss is denied.

The action is brought by plaintiff in error, as plaintiff, to recover anticipated profits upon the following contract:

"Whereas Thomas J. Rogers is the owner of the following described real estate situated in recording district number two of the Cherokee Indian Territory and south of and contiguous to the town of Grove in said territory: The south half of the north half of the southwest quarter of section five, township twenty-four north of range twenty-four East Indian meridian; and whereas, the said Rogers desires to place said property on the market as town lots or property, Now, this evidences that in consideration of the premises herein set forth, the said Thomas J. Rogers and William H. Cloe hereby mutually agree with each other as follows: First, That said Rogers will cause said real estate to be surveyed, platted, laid out and mapped into town lots, streets and alleys, and to cause said streets to be graded, and said property otherwise placed in proper condition to go on the market as town lots or property at his own expense and without charge to said Cloe. It is further agreed that when said property has been platted and mapped as herein provided for said lots shall be appraised and valued by the parties hereto, so that the aggregate value of appraisement thereof shall not be more nor less than four thousand ($4,000.00) dollars, which valuation shall be accepted by the parties hereto as the cost value or price of each of said lots, and at the same time said parties shall also determine and fix the selling price of each of said lots in such sums or amounts as they may mutually agree upon. And it is further agreed by the said Thomas J. Rogers that the said William H. Cloe shall be and is hereby constituted, the sole and exclusive agent of the said Thomas J. Rogers to solicit, find purchasers for and otherwise manage and conduct the business of the sale of said lots at the prices designated, or that may be mutually agreed upon by said Rogers and Cloe, and when a purchaser has been found or a sale of said lot made, the said Thomas J. Rogers shall, as soon as practicable thereafter, execute and deliver to the purchaser a proper deed of conveyance therefor and collect the purchase price of the lot so sold, which purchase price shall be applied as follows: That is to say, the cost value or price of such lot or lots shall be deducted from the selling price thereof and shall become the property or money of the said Thomas J. Rogers and the excess of said proceeds shall be equally divided between said Rogers and Cloe and shall be deposited in some bank by them mutually

agreed upon, and that this contract shall continue in force for two years from this date unless sooner dissolved by the parties hereto. Executed in duplicate this the first day of Sept. 1906　[Signed] T. J. Rogers.　W. H. Cloe."

Plaintiff alleged in his petition that shortly after the execution of said contract the defendant caused the real estate herein described to be surveyed, platted, and laid out into lots and blocks, as provided for by the contract; that plaintiff, in pursuance of the contract, in the spring of 1907, opened up an office in Grove, Okla., placed a competent man in charge of it, and proceeded, at considerable expense, to mature plans for disposing of said property as provided for in the contract, and that while he was engaged in carrying out the contract the defendant began to importune him to modify the contract, and obstructed the carrying out of the same in various ways, and finally, in July, 1907, entirely repudiated the contract and assumed control of the property himself, and proceeded to dispose of it for his own benefit and at prices to suit himself; that, before the plaintiff had proceeded to open up the office in Grove, he and defendant had agreed upon and fixed the cost price of each and all the lots, aggregating $4,000, and the selling price of each and all the lots, aggregating $17,575, and had made lists of the same, a copy of which list he made an exhibit to his petition; that the difference between the cost price and selling price of the lots was $13,575, one-half of which, or $6,787.50, the plaintiff was entitled to as his share of the proceeds of sale; that of this sum he had only received $125, leaving a balance of $6,662.50 due him; that defendant had put an end to the contract, and plaintiff would have been able, but for the breach of the contract by the defendant, to make sales of all the property on the terms fixed and agreed upon between him and defendant within the time limited by the contract. He therefore asked judgment for the sum of $6,662.50 and costs of suit for breach of the contract.

On demurrer being filed to the petition and denied, defendant answered. He admitted the execution of the contract, but alleged that there was no consideration for his signing it, and set up as defenses that plaintiff's agent, Bates, in charge of the office at

Grove, undertook to sell other property in Grove in opposition to defendant's property; that he sold three of the lots included in the contract to George Hampton at a price lower than the contract price, without the knowledge of defendant; that neither plaintiff nor Bates had ever found a purchaser on the terms and conditions of the contract; that upon discovering the plaintiff was not handling the property in good faith, and had made no reasonable efforts to sell it, he had, about July, 1907, informed the plaintiff that he would handle the sale of the property himself, on terms that appeared to him to be to his best advantage; that he had not obstructed the sale of the property prior to that time; that the sale to Hampton was the only one made by the plaintiff; that plaintiff did not, in fact, receive the sum of $125, which would have been the full amount of his share of the Hampton sale at the contract price, but received only $100, giving the balance as a rebate to Hampton; that it was necessary for plaintiff to procure town license as a real estate broker; and that he did not do so.

On the 29th day of May, 1908, plaintiff filed his reply, in which he denied that the contract was without consideration; denied that Bates undertook to sell other property in opposition to defendant's property; denied that plaintiff had handled the property in bad faith, or that he had made no reasonable efforts to dispose of it; admitted that Bates had allowed Hampton to retain $25 out of plaintiff's share, but alleged that this was for the benefit of both plaintiff and defendant, and to enable a sale to be made, and that in consideration thereof Hampton agreed to improve the lots, and thereby enhance the value of adjoining lots included in the contract, and the defendant received his full share of the schedule price; that such sale was made in good faith, and defendant was in no way injured thereby, but was, in fact, benefited; denied that it was necessary to procure license as real estate broker, but alleged, as a matter of fact, that Bates did procure such license.

The cause was tried to a jury, which, at the conclusion of the evidence admitted for plaintiff, was instructed by the court to return a verdict in favor of the defendant, which was accordingly done, upon which a judgment was entered, dismissing plaintiff's

cause of action at his costs. Motion for new trial was duly filed and denied, and the cause has been regularly brought to this court for review.

Two propositions are presented and argued by counsel necessary for our consideration: First, was the contract unilateral and without consideration, and did defendant have, not only the power, but also the right, to revoke it; and, second, should it be concluded that he possessed the power, but not the right, could plaintiff, under the contract, recover unearned and anticipated profits which he was denied the opportunity of earning by the revocation of the contract?

On the first proposition, it must be conceded that, before plaintiff acted, the contract was merely a proffer on the part of the defendant, and, so far as the same remained unacted on by plaintiff, was subject to revocation; that it was an offer to appoint plaintiff an agent, uncoupled with any interest whatsoever in plaintiff; and that, had revocation been made prior to any act on the part of plaintiff, defendant had the power and the right to revoke. The question involved, however, it being undisputed that plaintiff accepted the proffer, opened an office at Grove, placed therein an agent, incurred considerable expense, and spent several months pursuing the business under the contract, is: Does this alter the relationship between the parties, and does it have the effect of giving to the plaintiff an actual, valuable interest in the contract, and supply the want of consideration and mutuality which existed prior thereto? In answer, we may say the general rule seems to be that, where an agency is uncoupled with an interest, it may be revoked by the principal at will, without liability for damages; but where it is for a fixed time, and contemplates on the part of the agent the expenditure of time and money to carry it out, and is accepted and the duties imposed are entered upon by the agent, and money and time are expended in pursuance of the object of the agency, that, although the principal has the power to revoke and bring to a termination the contract, yet he lacks the right of so doing, except upon the burden of responding to the agent for such damages as he may suffer by reason thereof. *John L. Rowan & Co. v. Hull,* 55 W. Va. 335, 47 S. E. 92, 104

Am. St. Rep. 998, 2 Am. & Eng. Ann. Cas. 884; *Glover v. Henderson,* 120 Mo. 367, 25 S. W. 175, 41 Am. St. Rep. 695; *Novakovich et al. v. Union Trust Co.,* 89 Ark. 412, 117 S. W. 246; *Attix, Noyes & Co. v. Pelan et al.,* 5 Iowa, 336; *Schoenmann et al. v. Whitt,* 136 Wis. 332, 117 N. W. 851, 19 L. R. A. (N. S.) 598; *Stringfellow et al. v. Powers,* 4 Tex. Civ. App. 199, 23 S. W. 313; *Hoskins v. Fogg,* 60 N. H. 402; *Kimmell v. Skelly,* 130 Cal. 555, 62 Pac. 1067; *Metcalf v. Kent,* 104 Iowa, 487, 73 N. W. 1037; *Lapham v. Flint,* 86 Minn. 376, 90 N. W. 780; *Goward et al. v. Waters,* 98 Mass. 596.

In the case of *John L. Rowan & Co. v. Hull, supra,* from the Supreme Court of Appeals of West Virginia, the contract provided for the sale of a farm, and provided that the "land (was) to be exclusively with them (the agent) three months, and until withdrawn. This August 5, 1902. J. W. Hull." It appeared that the agents proceeded and found a purchaser within the time limit, whereupon the owner of the land informed the purchaser that he had revoked the power of the agents to sell, and on the question of his right to do this the Supreme Court of Appeals, quoting from section 209 of Mechem on Agency, said:

" 'Where the authority is not coupled with an interest, the principal has power to revoke at his will at any time. But this *power* to revoke is not to be confounded with the *right* to revoke. Much uncertainty has crept into the text-books and decisions from a failure to discriminate clearly between them. Except in those cases where the authority is coupled with an interest, the law compels no man to employ another against his will. The relation of agent to his principal is founded, in greater or less degree, upon trust and confidence. It is essentially a personal relation. * * * It is the rule of law that contracts of agency, like those creating other personal relations, will not be specifically enforced. Nor does it make any difference in this view that the principal has expressly agreed that he will continue to confide in the agent for a definite period. It is no less difficult on that account, to coerce compliance. * * * The law, therefore, leaves the principal in such cases to determine for himself how long the relation shall continue. This, then, is what is meant when it is said that the principal may revoke the authority at any time. But it by no means follows that, though possessing this power, the principal has a right to exercise it without liability, regardless of his

contract in the matter. It is entirely consistent with the existence of the power that the principal may agree that for a definite period he will not exercise it, and for the violation of such agreement the principal is as much liable as for the breach of any contract. It is in this view, therefore, that the question of the right to revoke arises.' Section 210. 'When the right to revoke exists— when no express or implied agreement exists that the agent shall be retained for a definite time, the power and the right of revocation coincide—such employments are deemed to be at will merely, and may be terminated at any time by either party, without violating contract obligations or incurring liability. The law presumes that all general employments are thus at will merely, and the burden of proving employment for a definite time rests upon him who alleges it.' Also section 620. To like effect, see Reinhard on Agency, secs. 159, 161; 1 Am. & Eng. Encyc. of Law, 1216. Thus Rowan & Co. had right of action for the breach of the contract in the revocation of their power within the period of three months. Authorities cited for Hull do not oppose this position, except *Simpson v. Carson,* 11 Ore. 361 [8 Pac. 325], a case not well reasoned. *Hunt v. Rousmanier,* 8 Wheat. 174 [5 L. Ed. 589], was a power coupled with an interest, a power to sell and pay the agent a debt, and it was held irrevocable in life or by death. By no means does it touch the proposition that, where one empowers another for a given time, the power can be recalled sooner, without liability. We do not deny that, even if the power says it is exclusive or irrevocable, it may be revoked unless coupled with an interest or for a fixed term. Mechem on Agency, sec. 204. But here is a fixed term."

In the case of *Attix, Noyes & Co. v. Pelan et al., supra,* the Supreme Court of Iowa, in speaking of the consideration involved in a similar contract, said:

"It need not appear upon the face of the contract; it may be proved by parol, or it may be inferred from the terms and obvious import of the agreement. *Patchin v. Swift,* 21 Vt. 292. The consideration was the undertaking of the plaintiffs to try and find a purchaser of the property. And their efforts in this respect, their time, labor, and money expended in endeavoring to effect a sale, constitute a sufficiently adequate consideration to support the promise on the part of the defendants."

Likewise the Supreme Court of Massachusetts, in a similar case (*Goward v. Waters, supra*), said:

"The position of the defendant's counsel is undoubtedly true that at the time the contract was signed it was a mere *nudum pactum*. The plaintiffs paid nothing, incurred no expenses or loss, and entered into no obligation on their part. They were at liberty to act or not, as they pleased, and would incur no liability by failing to do anything. But it is also apparent that the writing contemplated services to be rendered and expenses to be incurred by the plaintiffs for the defendant; and that the promises were made in view of such future services and expenses. The writing is merely a stipulation, by the defendant, of the terms upon which compensation shall· be made by him. Subsequent performance of service and expenditure of money, in prosecution of the employment thus authorized, furnish a sufficient consideration for the promises of the defendant."

So that we conclude that, although possessing the power to revoke the commission granted, the principal lacked the right to do it, except under liability for such damages as his agent may have suffered in its exercise.

The remaining question is the measure of damages to be allowed for the breach of the contract, and of their character and the proof which may be adduced to establish the same. The sole relief asked by plaintiff in this cause is for the contemplated profits which were in the minds of the parties at the time of the execution of the contract. The question of allowing them has been a troublesome one in the courts, and exhaustive dissertations have been written thereon in the different cases where the question has arisen. There is, from a careful reading of the cases, apparently some conflict among them; but a scrutinizing investigation discloses that the cases wherein the rule is declared against are written with particular reference to the facts in the cases under consideration, and then a generalizing discussion indulged in, wherein is asserted a general rule, but intended to be applied to the facts then before the court, and often entirely inapplicable to other actions, where a different state of facts is presented. It is fundamental that the damages recoverable for a breach of contract are those which can be said to have arisen naturally, or to have been within the contemplation of the parties to the contract, at the time of its execution, as the probable result of its breach.

The rule fixing the damages recoverable on breach of contract is laid down in the leading case of *Hadley v. Baxendale,* 9 Exch. 341 (1854). Baron Alderson, who prepared the opinion for the court, said:

"Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered, either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it."

Speaking of the question of whether the loss of contemplated profits is a proper measure of damage, this court, in an opinion by Harrison, C. (*Ft. Smith & Western Railroad Co. v. Williams,* 30 Okla. 726, 121 Pac. 275), delivered at this term of court, said:

"This has ever been looked upon and treated by the courts as a vexed and difficult question. It has been, and will always be, impossible to lay down any fixed and definite rule correctly applicable in all cases. There has never been a rule established which was decisive and universally followed by the courts in all cases; but the inclination of the earlier authorities to hold that contemplated profits *per se* were improper elements of damage has given way under the riper wisdom of jurisprudence, and, instead of holding to the earlier inclination, the weight of authorities in modern jurisprudence either holds or concedes that, where a loss of profits is not too remote or conjectural to be susceptible of computation with reasonable accuracy, they are proper elements of damage."

Here follows a long list of authorities supporting the conclusion reached, to which might be added the well-considered cases of *Kelley, Maus & Co. v. La Crosse Carriage Co.,* 120 Wis. 84, 97 N. W. 674, 102 Am. St. Rep. 971, and *Emerson v. Pacific Coast & Norway Packing Co.,* 96 Minn. 1, 104 N. W. 573, 1 L. R. A. (N. S.) 445, 113 Am. St. Rep. 603.

Quoting from a decision by the Supreme Court of the United States, in the case of *Emerson v. Pacific Coast, etc., Packing Co., supra,* Mr. Justice Jaggard, in discussing the cases falling within the rule and those which present the exception, said:

"Even a casual examination of the authorities as a whole satisfies that it is exceedingly difficult to determine, as between the allowance and denial of profits as damages, which is the rule, and which is the exception. Nor is it especially significant which conclusion on this point be reached. No presumption for or against the award has been established. It is also doubtful whether the current general formula of the courts is not too indefinite and uncertain to be of much practical avail. A frequently quoted statement of the rule is that of Justice Lamar, in *Howard v. Stillwell-Bierce Mfg. Co.,* 139 U. S. 199, 11 Sup. Ct. 500, 35 L. Ed. 147: 'Profits which would have been realized, had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or of remoteness, or where, from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and mutual understanding of both parties at the time it was entered into.' "

The question arises in the case at bar upon the rejection by the court of the evidence offered by the plaintiff for the purpose of showing the profits which he sought to recover were not open to the objection of uncertainty or remoteness, and to show the special circumstance under which the contract was made; for the purpose of establishing that they were within the intent and mutual understanding of the parties at the time it was entered into, and particularly of the arrangements of plaintiff to carry it out. Plaintiff's attorney stated on the occasion of the rejection of this evidence:

"We expect to introduce testimony as to sales that have been made out of this addition since this defendant in this case took charge of the property, and since the termination of the contract by him."

The court announced his rule as follows:

"I will limit you to this: If you have any evidence at all to show that you had any purchasers, that there was an addition sold here in town, something that could be depended upon. This is purely speculative, and I do not see anything in this matter to let it go to the jury. If there is any evidence as to the damages on the question you have asked him, which is what he intended to do, what his plans were, if you can show that there

was an addition sold to the town, then that would probably be something to the jury."

We think the limitation placed by the court upon the introduction of this evidence was, under the decided cases, too narrow. We cannot but conclude that the tender of testimony offered by the plaintiff, showing sales that had been made out of the addition in question since the defendant had taken charge of the property, was admissible on the question then before the court. Whether it would develop that these sales had been made within the unexpired term of the contract is not disclosed, for the reason that all evidence of plaintiff looking to the establishment of his damages on this or any similar basis was rejected. In the case above noted (*Emerson v. Pacific Coast, etc., Packing Co.*), Justice Jaggard said:

"There can be no doubt, however, that the trend of authority and the weight of reason have established that an agent selling on commission, upon breach of his contract by his employer without just cause, is entitled to the profits, past and future, he would have realized if the defendant had performed his contract; and that evidence of sales made by the defendant within the unexpired period is admissible, and should be considered by the jury, upon proper caution by the court to avoid excess or speculation, to show the proper extent of plaintiff's recovery."

The learned judge further says:

"It is no exoneration to defendant that his misconduct, which has made inquiry as to the *quantum* of harm necessary, renders that inquiry difficult. *Simpson v. London,* 1 Q. B. D. 274; *Dart v. Laimbeer,* 107 N. Y. 664, 14 N. E. 291. The best the law can do is to award approximate compensation. Its failure to do even and exact justice in such cases is not more conspicuous than in many others. No other remedy is available. To allow only for loss of time and expenses would put a premium upon breaking contracts and deny substantial justice."

The case of *Wakeman v. Wheeler & Wilson Mfg. Co.,* 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676, was one wherein an agent entered into a contract with the manufacturing company to sell sewing machines in Mexico. The company after a time refused to comply with the term of the contract. On the question of the amount of damages that might be recovered and the evi-

dence proper to go to the jury, the Court of Appeals of New York said:

"The agent whom plaintiffs sent to Mexico was apparently intelligent, capable, and well acquainted with Mexico. Machines could be delivered there for about $30 per machine, and could be sold at retail for about $125. The profit of the plaintiffs on each machine was about $4. Plaintiff's agents readily made sales of 101 machines, and were about to make other sales. One of defendant's agents subsequently sold in a single city twenty machines in six months, at $125 each. The plaintiffs had established two agencies, and to the value of such agencies at least they were entitled. Mead, who had one of the agencies, testified that he had made arrangeemnts with several parties to sell on an extensive and profitable business, and was well acquainted with the country. The population of several of the Mexican cities in which plaintiffs' agent was engaged in establishing agencies was shown. From all these and other facts proved, it cannot be doubted that the plaintiffs suffered damages of at least several hundred dollars, and they should not have been deprived of the damages which they made to appear, because they could not make clear the full amount of their damages. All the facts should have been submitted to the jury, with proper instructions, and their verdict, not based upon mere speculation and possibilities, but upon the facts and circumstances proved, would have approached as near the proper measure of justice as the nature of the case and the infirmity which attaches to the administration of the law will admit. In 1 Sutherland, Damages, 113, it is said: 'If there is no more certain method of arriving at the amount, the injured party is entitled to submit to the jury the particular facts which have transpired, and to show the whole situation which is the foundation of the claim and expectation of profits, so far as any detail offered has a legal tendency to support such claim.' "

The subject of the contract here under consideration was profits on the sale of these lots. The defendant, the owner of the land, divided it into parcels, placed the net cost price on each of them, so that the tract in its entirety would net him $4,000. The proffer made to the plaintiff was that if he should undertake the sale of these lots, conduct it, solicit, find purchasers for, and otherwise manage the business, that the excess of the proceeds received from the sale should be equally divided between them. So that the sole consideration on the part of plaintiff for entering

into the contract was to secure the profit which might be made from conducting the enterprise; and the sole consideration which prompted the defendant to enter into it, assuming the property was worth the net price to be received, was his share of these profits. Profits, then, was the subject of the contract and the object of its execution, and it was this gain that was in the minds of both the parties when they met and dealt. If, then, the profit to be made from the engagement was in contemplation of the parties, if it was the moving cause for their acting, plaintiff was entitled to the right, on bringing action for the lost profits, to offer such evidence as he could, relevant to the issue, to endeavor to make certain their quantity, and to entitle him to recover such amount as he was able to relieve, by the evidence, from the ban of uncertainty, remoteness, or speculativeness. The sole question to be determined in this action is the amount of detriment caused by the breach of this obligation, and accepting evidence as to the lost profits is based on the proposition that the measure of the loss may be best determined in this way.

Our statute (section 2888, Comp. Laws 1909) provides:

"For the breach of an obligation arising from contract, the measure of damages * * * is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

And in accepting evidence of lost profits it is assumed that the amount of detriment caused by the breach of this obligation could be best measured, in view of its terms, by the establishment that, in the ordinary course of things, these profits would have been gained, and that they were lost. If plaintiff is unable to show this, then he cannot succeed; but he is at least entitled to the right to try. This rule as to lost profits has been adopted in other jurisdictions in similar cases, and, in our judgment, is applicable in this one. *Durkee et al. v. Gunn,* 41 Kan. 496, 21 Pac. 637, 13 Am. St. Rep. 300; *Hawley, Adm'r, v. Smith, Adm'r,* 45 Ind. 183; *McLane v. Maurer et al.,* 28 Tex. Civ. App. 75, 66 S. W. 693, 1108; *Novakovich et al. v. Union Trust Co., supra; S. Blumenthal & Co. v. Bridges,* 91 Ark. 212, 120 S. W. 974, 24 L. R. A. (N.

S.) 279; *Spencer Medicine Co. v. Hall,* 78 Ark. 336, 93 S. W. 985; *Van Gorder v. Sherman,* 81 Iowa, 403, 46 N. W. 1087; *Schultz v. Griffin,* 5 Misc. Rep. 499, 26 N. Y. Supp. 713; *Levy v. Rothe,* 17 Misc. Rep. 402, 39 N. Y. Supp. 1057; *Green et al. v. Cole,* 127 Mo. 587, 30 S. W. 135; *Wells v. National Life Association of Hartford,* 39 C. C. A. 476, 99 Fed. 222, 53 L. R. A. 33; *John L. Rowan & Co. v. Hull, supra; Stringfellow et al. v. Powers, supra.*

The case of *Durkee et al. v. Gunn, supra,* was one wherein Durkee & Stout entered into a contract with the real estate firm of Gunn & Marr, under which certain lands adjoining the city of Ft. Scott were to be platted and sold under a contract substantially the same as the one in the case at bar. Prior to the expiration of the time limited in the contract, the principal wrongfully revoked the agency, just as, it is contended, was done by the defendant in the case at bar; and the Supreme Court of Kansas, speaking through Mr. Justice Horton, said that "Messrs. Durkee & Stout cannot take advantage of their own wrongful acts, and as Gunn was prevented by them from performing a contract his remedy is the same as if he had performed." The following is the syllabus:

"Where an agent has an agreement with his principal to sell certain lands, which have been placed in his hands to be disposed of within a time limited, and the agent is to receive no pay or compensation for advertising, putting the same upon the market, or for his services, excepting a share of the profits arising from the sales of the lands, and in the performance of such agreement he renders services for several months, and expends time and money; and then, without any reason or excuse, the principal revokes the contract, the agent is entitled to recover from the principal such compensation in damages as will be equal in amount to his share of the profits which would have resulted, had the lands been sold by him."

We may say that the rule here declared had particular reference to the facts disclosed, and the general doctrine asserted is broader than we believe is generally applicable.

The case of *Hawley v. Smith, supra,* was one wherein, under a written agreement between the principal and agent, the princi-

pal furnished means to purchase a large quantity of land. The agent was to take the agency for the sale of the land and to make no charge as commissions or for personal services. The principal was to be paid his original investment, with 10 per cent. interest therein, from the proceeds of the lands, and the agent was to have one-half the residue for his services, and to be sole agent for the sale of the same for the term of four years. On the revocation of the said contract, prior to its termination under the terms, the Supreme Court of Indiana held that the agent "was entitled to recover from his estate (the principal having died)     *     *     * such sums as he could have realized by the sales of the land within the four-year limitation, if his authority to sell had not been so terminated."

· A similar case is that of *Green et al. v. Cole, supra,* from the Supreme Court of Missouri; the doctrine announced being held in the syllabus as follows:

"A principal is liable in damages to his agent where he employs the latter to plat and sell land within a fixed time, and, after the agent has performed services under the contract, the principal, without cause, revokes the authority and sells the land himself. The proper measure of damages in such action by the agent is the profit, if any, which would have resulted to him, had he been permitted to complete the contract by selling the land."

The case of *S. Blumenthal & Co. v. Bridges, supra,* from the Supreme Court of Arkansas, was likewise one where the principal himself sold the land within the time for which he had listed it with a broker, and the court, in the syllabus, declared that "the measure of the broker's recovery is the profit he would have realized if he had been permitted to perform." · Discussing the case, the court, quoting from Reinhard on Agency (section 269) said:

"Where the parties had provided by their agreement what the agent's compensation shall be in case the principal sees fit to · revoke the contract prematurely, such agreement shall form the basis of the agent's recovery.     *     *     * In the present case, however, the contract did not stipulate expressly for a measure of the agent's compensation in case the contract should be broken. It only provides for what the compensation shall be when the contract is performed. Therefore, where the agent elects not to

treat the contract as rescinded as soon as it is broken, and sue for the value of his services, but elects to sue for the probable damages resulting from the breach, the only measure of his damages is the profit he would have realized from the performance of the contract, if he had been permitted to perform it within the time named. The court submitted the case to the jury on this measure of damages, and there was evidence sufficient to sustain the verdict. The instruction given by the court was not strictly accurate, in that it told the jury that appellee, before he could recover, must show that he found a purchaser and tendered to the appellants the price."

The case of *McLane v. Maurer et al., supra,* from the Court of Civil Appeals of Texas, was one wherein certain agents were authorized to sell a tract of 7,000 acres of land of their principal, on which was fixed a minimum price, and provided that the tract should be subdivided, and a price agreed upon for the smaller tracts. Plaintiffs were to have 5 per cent. for lands sold at the minimum price, and one-half of the excess for those sold above that price, but no commission on the value of the improvements. Prior to the expiration of the time given the agents within which to perform, the contract was breached by the principal. On the measure of damages, the court, in the opinion, said:

"The only question that could arise in the matter of the benefits that would have accrued, had the contract not been breached, would be as to the proof. If appellees could make it appear reasonably certain that they would have sold the whole of the land but for the interference of appellant, they would be entitled to the interest in what they could show the land would have sold for."

In our judgment, the doctrine of the foregoing cases establishes that plaintiff in this action is entitled to offer evidence showing what benefits would have accrued to him, had the contract not been breached by the defendant. The broad general rule in such cases being that the plaintiff may recover such damages, including gains prevented, as well as losses sustained, as are shown to have been in the contemplation of both parties at the time of the making of the contract as the proximate and natural consequence of a breach of defendant; and in determining the same all the facts relating to the subject-matter of the contract

and surrounding the execution thereof known to both parties may be considered; and to establish the amount recoverable all facts which would reasonably tend in any way to make certain the amount of injury inflicted are admissible, but it is proper and right that the jury should be cautioned not to deal in speculative conjecture in drawing these deductions from the evidence offered.

The judgment of the trial court, therefore, is accordingly reversed, and the cause remanded, with instructions to set the same aside and grant plaintiff a new trial.

; All the Justices concur.