BANKERS SERVICE LIFE INSURANCE COMPANY (Formerly Bankers Security Life Insurance Company), Plaintiff in Error,

v.

Walter RAY, Defendant in Error.

No. 38081.

Supreme Court of Oklahoma.

April 14, 1959.

Rehearing Denied June 9, 1959.

Thomas E. Bennett, Oklahoma City, for plaintiff in error.

Herbert Hope, C. O. Hunt, Clarence H. Bowie, by C. O. Hunt, Pauls Valley, for defendant in error.

HALLEY, Justice.

October 26, 1956, Walter Ray filed this action in the District Court of Garvin County, against Bankers Service Life Insurance Company, to recover damages alleged to have been suffered by him as a result of the breach of two agency contracts dated October 9, 1952, and alleged by plaintiff to have been wrongfully terminated by the insurance company on January 4, 1956, resulting in alleged damages to plaintiff in the total sum of $176,928.40. The case was tried to a jury and resulted in a verdict of $5,000 on the first cause of action and $3,500 on the second cause of action, or a total of $8,500, for which judgment was rendered for the plaintiff. Defendant has appealed. The parties are in a reverse position to that in the trial court but will be referred to as plaintiff and defendant, or by name.

There is no dispute about the two contracts between the plaintiff and the insurance company, dated October 9, 1952. They appear to be ordinary agency contracts whereby the agent is granted authority to solicit applications for insurance and forward them to the insurance company. Paragraph No. 17 of each contract provides in part as follows:

"This Contract may be terminated at any time by the Agent upon not less than ten days' notice in writing mailed or delivered personally to the Company at its Home Office.

"This Contract may be terminated by the Company upon not less than ten days notice in writing mailed to the Agent's last known address, or delivered personally to him, but only for one or more of the following causes:

"(a) Legislation, court decision or Insurance Department ruling or requirement, which in the opinion of the Company (of which it shall be the sole judge) renders it expedient to withdraw from the whole or any part of the territory covered by this Contract, or which contravenes any provision of this Contract.

"(b) Failure of the Agent to comply with any provision of this Contract.

"(c) Violation by the Agent of any Insurance Law of the State in which said Agent solicits insurance."

Plaintiff alleged that each of his two contracts as an insurance agent for the defendant were wrongfully breached by the defendant on January 4, 1956, resulting in the damages alleged. No notice in writing for the ten-day period expressly provided in the written contract is claimed to have been given.

The parties agreed that the plaintiff as an agent for the defendant in selling life, polio and hospital insurance for the de-

fendant earned the following sums: for 1952, $816.51; for 1953, $5,192.34; for 1954, $5,564.24; and for 1955, $4,484.27. These sums include the agent's share of commissions of renewal premiums as provided in the two contracts here involved.

The defendant insurance company submits as its first proposition as follows:

"Defendant did not terminate plaintiff on January 4, 1956, wrongfully or otherwise."

This proposition requires a review of the evidence bearing upon what occurred between the parties on January 4, 1956, when plaintiff alleged that the contract between him and the insurance company was broken and terminated. The plaintiff, Walter Ray, testified as follows:

"Q. Mr. Ray, when did you cease your activity in connection with Bankers Service Life Insurance Company? A. January 4, 1956.

"Q. Why did you quit, beg your pardon—why did you stop your services with Bankers Service Life Insurance Company? A. Mr. Duncan, the agency supervisor, came by my home at ten o'clock in 1954, me and my family had been to prayer meeting, and he came in and wanted to go to my little office out in front of my home, got out there and he asked me the different *companys* I was writing car insurance for when he said, 'Well, I want to pick up your supplies, we are not going to allow you to write car insurance and represent our company'. I said, well, do you want to pick them all up, he said, 'Yeah, get them all together'. So I got them all together, I said, before you do that you are going to give me a receipt. He said, 'No, that's not necessary', I said, it is necessary. He said, 'Well, I'll sign a receipt then', so I made him sign the receipt.

"Q. Did he·leave anything for you at all? A. No sir, he picked everything up."

On re-direct examination Mr. Ray testified:

"Q. Mr. Ray, have you ever received any· notice from Bankers Service Life Insurance Company of their intention to cancel or to terminate either of the contracts you had with them?

"A. You mean by mail?

"Q. In any form, have you ever received any written notice?

"A. No sir."

M. C. Duncan, agency supervisor for Bankers Service, testified further:

"A. At the time of my conversation with Mr. Ray, he told me that his, what I call casualty insurance or his fire and automobile and other types of insurance that he sold had been very lucrative to him, but aside from that I told him that my feeling was he would be a better casualty insurance man if he confined himself to that field.

"By Mr. Bowie: Now we object to that as incompetent, irrelevant, and immaterial, what he told him would be in violation of the contract.

"By The Court: Overruled, exception.

"A. I told him that I thought he would be better served if he confined himself to either the casualty insurance field or personal insurance field, life and hospitalization. He told me that he did not, would not give any consideration to dropping his casualty insurance business and I asked if that meant that he would not be able to write more business in the future than he had in the past for Bankers Service and he said that he felt that was true, he would not. Then I suggested to Mr. Ray if that were true, that if that were true, I didn't feel like he would have any real need for quite a quantity of the Bankers Service supplies that he had on hand at that time inasmuch as the company was, at that time, revising their application forms and coming out with new forms. * * *

"Q. Mr. Duncan, did you tell Mr. Ray that he was terminated? A. No I did not.

"Q. Did you fire Mr. Ray? A. No I did not.

\* \* \* \* \* \*

"Q. And did you ever prepare a notice to him, did you ever prepare any kind of notice to him that his contract was terminated? A. No sir."

He further testified that he did not go to see plaintiff for the purpose of terminating his contract; that he did pick up the major portion of his supplies, and gave no notice of any kind to plaintiff that his contract was terminated, and that Bankers Service would have been pleased to have more business from him, and that he left with plaintiff some applications for insurance, which he thought were sufficient for an agent to produce new business.

Mr. George S. Ashley, Jr., vice president and director of underwriting and claims for defendant, testified that he knew of no applications received by the company from plaintiff after January 4, 1956; that he was generally notified when an agent was terminated, but was never notified that plaintiff was terminated as an agent of defendant. Mr. Phillip White, director of sales, testified that he was never notified that plaintiff's employment was terminated.

Mr. Joe C. Scott, president of defendant, testified that to the best of his knowledge plaintiff's contract had not been terminated, and that the March 27, 1956, check paid to plaintiff was because they did not know but that he was still representing the company.

It appears that plaintiff had placed some application blanks with some sub-agents prior to January 4, 1956, which accounts for some remittances forwarded by plaintiff after that date but he had no rate book after it was picked up by M. C. Duncan January 4, 1956.

Neither was plaintiff paid for any renewals after March 25, 1956.

Plaintiff alleged that he was discharged as an agent January 4, 1956, by Mr. Duncan. This is denied by the defendant. Paragraph 17 of the contract can only be terminated for one or more of the three causes named, and (a) is, if legislation or court decision or Insurance Department ruling makes it expedient for the company to withdraw from all or part of the territory covered by the contract; (b) failure of the agent to comply with any provision of the contract; and (c) violation by agent of Insurance Laws of the State.

Our attention is called to Section 233, 15 O.S.1951, which has to do with the right of a party to rescind a contract. Defendant asserts that of the contracts involved, subsection 2 provides that a party to a contract may rescind the same "If through the fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part" and subsection 5 merely provides that a contract may be rescinded "By consent of all the other parties."

We think it clear that the first and principal issue to be determined is whether the defendant terminated its contracts with the plaintiff on January 4, 1956. The receipt of that date is very specific on the question of whether the agent of defendant took up all or part of the supplies of defendant. It says: "Received of Walter S. Ray, Pauls Valley, Oklahoma, rate book No. 54 and all supplies and property of Bankers Service Life Insurance Company", and the agent who signed this receipt, M. C. Duncan, had just told plaintiff " \* \* \* we are not going to allow you to write car insurance and represent our company."

We conclude that there is some competent evidence to support the finding of the jury for the plaintiff which must have been based upon a finding that the defendant had wrongfully terminated its contracts with the plaintiff.

We find no merit in the contention of defendant that the contracts could not have been terminated under the pleadings of the plaintiff.

We cannot agree that defendant performed every promise contained in the contracts

with plaintiff. It gave no notice as provided in the contracts and failed to pay renewal commissions after January 4, 1956. Section 15 provides that printed matter or other supplies furnished the agent remained the property of defendant and shall be returned to the company upon termination of the contract. Taking up all supplies was an indication of termination or intention to terminate, and we think there is direct evidence of termination on January 4, 1956. How could the plaintiff be expected to produce the minimum applications after he had been deprived of his applications and his rate book?

We have examined the instructions complained of on the subject of proof of damages, and find that the instructions given fairly state the applicable law.

The complaint that the defendant was injured by plaintiff's non-meritorious allegations of his gradual growth in volume of new business, and the court's refusal to adequately instruct the jury upon this subject is made. The evidence was clear that in 1955 plaintiff had spent considerable time in rebuilding his home which no doubt accounts for a smaller business than in 1953.

It is difficult to understand the contention that plaintiff's damages could not have been greater than the loss he suffered in ten days following January 4, 1956. Defendant seems to rely upon the fact that plaintiff used two persons as sub-agents after January 4, 1956, when the insurance law requires the licensing of sub-agents. The defendant accepted the money tendered with these applications and paid the plaintiff the commissions due.

■ We cannot agree that the court should have sustained the demurrer to plaintiff's evidence. There was sufficient competent evidence to warrant submission to the jury.

The measure of damages for breach of contract is defined in 23 O.S.1951 § 21, as follows:

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin."

This Court in Cloe v. Rogers, 31 Okl. 255, 121 P. 201, 38 L.R.A.,N.S., 366, quoted from Emerson v. Pacific Coast, etc., 96 Minn. 1, 104 N.W. 573, 575, 1 L.R.A., N.S., 445, relative to an agent's commission and prospective commissions, as follows:

" * * * and agent selling on commission, upon breach of his contract by his employer without just cause is entitled to the profits, past and future, he would have realized if the defendant had performed his contract, * * *"

*   *   *   *   *   *
" * * * It is no exoneration to defendant that his misconduct, which has made inquiry as to the quantum of harm necessary, renders that inquiry difficult. * * * The best the law can do is to award approximate compensation. Its failure to do even and exact justice in such cases is not more conspicuous than in many others. No other remedy is available. To allow only for loss of time and expenses would put a premium upon breaking contracts and deny substantial justice.' "

■ We think the evidence in the present case warranted the court in giving to the jury instruction No. 9, covering the measure of damages for breach of contract, and we find that such instruction properly tells the jury that the correct amount is such sum as plaintiff would have or could reasonably have expected to earn if the contract had not been breached, less the cost of producing such net income, less the net income actually earned, less the net earnings since January 4, 1956, and less what can be reasonably expected to earn in the future without the benefit of such contract.

The plaintiff here proved what he had earned while an agent for the defendant, and what he and his wife had earned since he was terminated as an agent for defendant. We think the evidence is sufficient to support a verdict for plaintiff for $8,500 in view of the undisputed net earnings of plaintiff from October 9, 1952, to January 4, 1956. The jury had a right to consider what plaintiff had earned since the contract involved here was terminated and what his probable loss would be in the future.

Since we find that the contract here involved was wrongfully breached and terminated by the defendant on January 4, 1956, to the plaintiff's injury and resulting in damages from loss of income accruing to plaintiff for preceding years when he was the agent of defendant and that such damages were fairly proven and that the jury was fairly instructed and rendered a verdict that is not excessive, the judgment of the trial court is affirmed.

WILLIAMS, V. C. J., and JOHNSON, BLACKBIRD, JACKSON, IRWIN and BERRY, JJ., concur.