# SUPREME COURT

OF

# ILLINOIS.

## FIRST GRAND DIVISION.

### NOVEMBER TERM, 1863.

JOHN PRESCHBAKER

*v.*

THE HEIRS OF JACOB FEAMAN *et al.*

1. MORTGAGE — *what constitutes — parol evidence.* In equity, the form of the transaction, in determining whether it is a mortgage, is not regarded, but the substance must control.

2. The intention of the parties, to be gathered in the light of surrounding circumstances, must give character to the contract in that regard.

3. It is not necessary, in order to constitute a transaction a mortgage, that it should be so expressed in the conveyance; but it may appear by a separate instrument.

4. Nor is it required that the deed and the defeasance should, in terms, refer to each other. Their connection may be shown by parol.

5. The defeasance need not even be in writing. The conveyance may be absolute on its face, and yet be shown by parol to have been intended merely as a security for the payment of money, when it will be treated as a mortgage.

6. So, in this case, a party in embarrassed circumstances, conveyed land, by a deed absolute upon its face, to one who advanced him the money to relieve his

necessities; at the same time the grantee executed a bond for a reconveyance of the premises, if within two years the grantor should pay the sum of $3,000, which was the amount advanced to him, without interest; the grantee not to be liable for rents. Upon bill to redeem, this transaction was held to be a mortgage to secure a loan of money.

7. SWORN ANSWERS IN CHANCERY — *evidence required to overcome them.* Upon bill to redeem, in the state of case mentioned, the answer denying the transaction to be a mortgage, was under oath. It was held, that parol evidence by a single witness of the fact that the money was advanced by the grantee in the deed with the view to relieve the grantor from his embarrassments, taken in connection with the deed and the defeasance, was sufficient to overcome the sworn answer and establish the transaction a mortgage.

8. ONCE A MORTGAGE, ALWAYS A MORTGAGE. It was not essential to the right of the mortgagor to redeem, that he should do so within the time limited in the defeasance. There is no rule of law which requires that a redemption shall be made within the time limited by the mortgage. Until foreclosed, it is a subsisting right, unless barred by the lapse of time.

APPEAL from the Circuit Court of Randolph county; the Hon. H. K. S. O'MELVENY, Judge, presiding.

On the 27th day of March, 1850, John Preschbaker, being the owner of a certain farm situate in the county of Randolph, conveyed the premises by deed, absolute upon its face, to Jacob Feaman and Henry O. Gilbert. The consideration expressed in the deed was three thousand dollars, and that amount was received by Preschbaker from the grantees.

Simultaneously with the execution and delivery of this deed, Feaman and Gilbert executed and delivered to Preschbaker a bond for the reconveyance of the land, if within two years thereafter, Preschbaker should pay to them the sum of three thousand dollars, without interest, Feaman and Gilbert not to be liable for rent. The words of the condition in that instrument were as follows:

"It is agreed by and between said Jacob Feaman and Henry O. Gilbert and John Preschbaker, that if the said Preschbaker shall pay to the said Feaman and the said Gilbert, the sum of three thousand dollars in two years from the date hereof, then the said Feaman and the said Gilbert on these presents agree to make unto the said Preschbaker, a good and sufficient deed to the premises in the deeds from the said Bond to the said

Preschbaker, and from the said Preschbaker to the said Feaman and Gilbert mentioned, the said sum of three thousand dollars to be without interest; in consideration of which the said Feaman and Gilbert not to be accountable for rents; but any improvements that may be made on said tracts of land shall be made without cost or charge to the said Preschbaker. Now if the said Feaman and Gilbert shall, after receiving the said sum of three thousand dollars from the said Preschbaker or his agent or legal representative at the expiration of the two years aforesaid, or within the said period of two years, execute a good and sufficient deed to the tracts of land before named, then this obligation shall be void; but if the said three thousand dollars shall be paid by the said Preschbaker on or before the twenty-seventh day of March, 1852, the said Feaman and Gilbert shall fail, upon demand being made by the said Preschbaker or his legal representatives to make said deed, then the foregoing bond shall remain in full force and effect."

This bond was duly recorded in the proper office on the 30th day of March, 1850, subsequently to which, Feaman conveyed his interest in the premises to Gilbert, and from him several successive conveyances were made to different parties.

Feaman and Gilbert entered upon the possession of the premises at the time of the conveyance to them from Preschbaker, and they and their grantees continued in possession until about September, 1858, when Preschbaker exhibited his bill in chancery in the Circuit Court against the heirs of Feaman, who had in the meantime died, and Gilbert and his grantees, seeking to redeem the land, alleging that the conveyance to Feaman and Gilbert, and their bond for a reconveyance were designed only as a mortgage to secure a loan of money.

Answers were made under oath, denying the material grounds alleged, upon which relief was sought.

The testimony on the hearing below, in relation to the main question, is as follows:

*R. B. Servant*, on behalf of the complainant, testified that he was employed by Preschbaker, Feaman and Gilbert, to draw the papers between them; the witness first prepared a condi-

tional deed with a covenant like that in the bond, except the penalty; Gilbert and Feaman preferred a regular deed, and would secure a reconveyance in two years, by refunding the money advanced without interest; the witness was directed by the parties then to draw a deed and bond, which he did; his understanding was, that the bond was to secure a reconveyance of the land back upon the payment of $3,000, within two years; he thought it was to have like effect to the condition in the deed first written.

The witness stated that his understanding was, that Preschbaker was embarrassed, and that Feaman and Gilbert advanced him the money to relieve him; and that if the money was refunded in two years, they would reconvey the premises; he could not say whether time was made material.

*Pierre K. Derouse*, on the part of the defendants, testified: I asked Preschbaker, in California, if he was coming back to redeem the farm, and he said no, as it had broke him up once he would have nothing more to do with it; he also told me, if he had staid here he would not have been worth seventy or eighty thousand dollars, as he then was in Marysville; this was in October, 1852; I think he said the time had passed.

*George W. Staley* testified: I knew Preschbaker wanted to sell the farm; George Morrison went with me to buy it; though not positive, I think Preschbaker so informed me of his wish to sell; I heard a conversation between Preschbaker and Gilbert before the deed was drawn, in Col. Servant's office; Preschbaker had requested Servants to draw a conditional deed; Gilbert refused to accept; told Preschbaker that was not the understanding—that he had bought the farm at Preschbaker's own figures, and he wanted him to execute such a deed as he had agreed to before coming there; that he only wanted what was right, and would give him such an article as would give him the privilege of repurchasing the farm within two years; Col. Servants then drew up the deed and bond, with which both seemed to be satisfied; I heard nothing said about Preschbaker being impoverished; I always understood it to be a regular sale, from both parties; I paid particular attention to

what I have stated; I went to pay the money for Feaman, as his agent.

*George Colbert* stated: Taylor came and looked at the farm, but declined to redeem it, or said he would not do so.

*S. S. Vrain* testified: I was present when the contract was made between Gilbert and Preschbaker; he sold the farm to Feaman and Gilbert for $3,000, as I understood; I witnessed the bond; I did not understand it to be a mortgage, but a sale with the privilege of repurchase, and this after the deed and bond were executed; I knew the land was offered for sale to Morrison.

*George B. Morrison* swears: The land was offered to me for $3,000; I thought I had bought it at that; nothing was said about a repurchase, that I recollect of.

*A. J. Stephenson* testified: Preschbaker told me he had sold the land to Feaman and Gilbert; this was about a month before he left for California.

*J. A. Gilbert* stated that Taylor told him he had looked at the farm and regarded it no speculation, and would have nothing to do with it.

It appears from the testimony of Taylor, who was authorized by Preschbaker to redeem the land within the two years stipulated, that he informed Feaman of his authority, within the time, but made no tender of the money, and Feaman declined to do anything in the matter, promising, however, to write to Gilbert on the subject. It seems, also, that Gilbert was to call to see Taylor in reference to the matter, but did not do so. The money was not paid.

The complainant also sought to have an account taken of the rents and profits of the land, with the view to their recovery; and testimony was given on that subject.

The court below entered a decree dismissing the bill. Thereupon the complainant took this appeal.

The questions presented upon the record are, 1st, whether the contract between Preschbaker and his grantees constituted a mortgage, or simply an absolute sale and conveyance and a resale; and 2d, if it be a mortgage, whether the complainant

has lost his right to redeem from the lapse of time, and whether he can recover the rents and profits of the land.

Mr. Thomas G. Allen, for the appellant, presented the following points and authorities: *First*, the deed and the bond, relating as they do to the same subject matter, between the same parties, and made at the same time, must be regarded as constituting but one contract, precisely the same as if they had been written on one piece of paper, and were embodied in one instrument. *Stooky et al.* v. *Hughes et al.*, 18 Ill. 57; *Jackson* v. *McKinney*, 3 Wend. 234; *Duncan et al.* v. *Charles*, 4 Scam. 566; *Stacy* v. *Randall*, 17 Ill. 468.

The deed and the defeasance constitute a mortgage, and not an absolute sale and conveyance and resale. (Rev. Stat. 1845, ch. 24, § 12; Powell on Mort. 67; 3 J. J. Marsh, 354; 1 Hilliard on Mort. 32; *Colwell* v. *Woods*, 3 Watts, 188; *Brown* v. *Nickle*, 6 Barr, 390; 1 Port. 328; 5 Humph. 612; *Miller* v. *Thomas*, 14 Ill. 431; *Russell* v. *Southard*, 12 Howard, 131; *Peterson* v. *Clark*, 15 Johns. 205; *Lane* v. *Shaw*, 1 Wend. 437; *Reitenbaugh* v. *Ludwick*, 31 Penn. 138; 6 Watts, 405; 7 ib. 261, 372; *Kintner* v. *Blair*, 4 Halst. Ch. 485; *Bailey* v. *Bailey*, 5 Gay (Mass.), 509; *Harrison* v. *Phillips' Academy*, 12 Mass. 456; *Blaucy* v. *Bearce*, 11 Greenl. 132; *Mills* v. *Darling*, 43 Maine, 565; *Tift* v. *Walker*, 10 N. H. 150; *Lund* v. *Lund*, 1 N. H. 40; *Moot* v. *Harrington*, 12 Vermont, 203; *Wright* v. *Bates*, 13 ib. 341; *Edrington* v. *Harper*, 3 J. J. Marsh, 354; 3 Yerger, 525; *Marshall* v. *Stewart*, 17 Ohio, 356; *Harbinson* v. *Lemon*, 3 Blackf. 51; *Watkins* v. *Gregory*, 6 ib. 113; *Batty* v. *Snook*, 5 Mich. 231.)

Mr. H. K. S. O'Melveny, for the appellees.

1. That a deed, on its face absolute, may be proved to be a security for money only, and, therefore, a mortgage is not disputed, but that the deed, in this case, was proved to be such security is denied.

2. At the delivery of the deed unless the relation of debtor and creditor existed it is not a mortgage but a conditional

sale. (4 Kent, marg., p. 144, note (a); 4 id., p. 145, and authorities there cited; 2 Barb. & Her. Ch. 258, 259 and 264.)

3. When grantor receives full value, and incurs no personal liability back from purchaser, the evidence that it was a mortgage must be clear and strong. (*Brown* v. *Dewery*, 2 Barb. S. C. 28; *Baker* v. *Thrasher*, 4 Den. 493; 2 Barb. & Her. Ch. 264, 50; 4 Kent, 138; Adam's Eq. 110; Greenl. Ev. on Tender, 600, 601, 602 and 603.)

Mr. ALLEN, in reply, insisted that the absence of a covenant or bond, or other express obligation to pay the money, did not vary the transaction; for that every mortgage implies a loan, and every loan implies a debt, for which the mortgagor's personal estate is liable; it is none the less a mortgage because there was no collateral personal security taken for the debt at the time. (2 Spence's Eq. Juris. 617; Hilliard on Mort. 86, 90; *King* v. *King*, 3 P. Wms. 358; *Russell* v. *Southard*, 12 How. 139; *Wharf* v. *Howell*, 5 Binney, 499; *Edrington* v. *Harper*, 3 J. J. Marsh, 355; *Cotterell* v. *Long*, 20 Ohio, 472; *Rice* v. *Rice*, 4 Pick. 349; *Smith* v. *People's Bank*, 11 Shepley, 195; *Brown* v. *Dewy*, 1 Sandf. Ch. 56; 19 Wend. 521; *Slowy* v. *McMurry*, 27 Mo.    ; 4 Kent Com. 145.

Mr. JUSTICE WALKER[*] delivered the opinion of the Court:

Appellant, on the twenty-seventh day of March, 1850, conveyed a farm with its improvements, to Jacob Feaman and Henry O. Gilbert. The consideration named, is three thousand dollars, which was the amount received by appellant. The grantees, concurrently with the execution of the deed, executed a bond to appellant, reciting the conveyance, and by which they bind themselves, if appellant should, within two years from that date, pay them the sum of three thousand dollars, to make, execute and deliver to him a deed of conveyance for the premises. It is stipulated in the condition to the bond, that the three thousand dollars shall be payable without interest, in

[*] Mr. CHIEF JUSTICE CATON, on account of ill health, was absent during the whole of this term.

consideration of which Feaman and Gilbert were not to be accountable for rents. They were to have the possession of the premises, but appellant was not to pay for improvements which they might make on the farm.

This bond was recorded on the 30th day of March, 1850, in the proper recorder's office. It is alleged that within the two years, appellant, who was then in California, employed one Taylor to see Feaman and Gilbert and to pay them the three thousand dollars. But this he failed to do, or even to make a tender of the money. He, however, testifies that within the time he saw Feaman and informed him that he had authority to pay it, but that Feaman declined doing anything in the matter, but promised to write to Gilbert on the subject. He also says it was the understanding that Gilbert would call and see him in reference to the matter, but that he never did. The evidence shows that various conveyances of the premises have been made, but they occurred after the bond to appellant was recorded. These purchasers have, therefore, taken their titles subject to notice of this bond, and any rights which appellant may have in the premises.

. It is urged, that the execution of the deed and bond for the reconveyance, as simultaneous acts, is in contemplation of law but a mortgage, and not a sale and contract for a resale. To determine whether such a transaction is a sale, or a mortgage to secure the payment of the money advanced, the intention of the parties at the time must control. To ascertain that intention, the transaction must be viewed in the light of all the surrounding circumstances. In equity, the form of the transaction is not regarded, but the substance must control. It is not the rule in equity that to constitute a transaction a mortgage, it should be so expressed in the instrument conveying the land, but it may appear by a separate agreement; nor is it necessary the deed and the defeasance, in terms, refer to each other. Their connection may be established by parol evidence, and the defeasance need not be even in writing. The conveyance may be absolute on its face, and yet be shown by parol that it was intended as a security for the payment of money, when it

will be treated as a mortgage. *Miller* v. *Thomas*, 14 Ill. 428. In such a case all of the attendant circumstances will be considered, in ascertaining the true character of the transaction. It is from them the intentions of the parties can be ascertained. This is the rule recognized in the cases of *Davis* v. *Hopkins*, 15 Ill. 519; *Smith* v. *Sackett*, ib. 528, and *Williams* v. *Bishop*, ib. 553. In these cases the rule in the case of *Miller* v. *Thomas*, is recognized, and applied as the correct principle.

It then remains to determine whether the evidence in this case brings it within the rule. Whether it is shown to have been designed as a mortgage or a conditional sale. Both instruments having been executed at the same time, must be regarded as forming but one transaction, and they seem rather to indicate a loan and mortgage, than a purchase and a resale. Such purchases and resales are not of frequent occurrence, whilst such mortgages are not unusual. The first we learn of this transaction, is when the deed and bond were being prepared. The scrivener who drew these instruments, first prepared a conditional deed with similar provisions to those contained in the bond; but Feaman and Gilbert preferred a regular deed of conveyance, and to secure a reconveyance within two years upon the money being refunded without interest. He then prepared the papers in their present form. The scrivener testifies that it was his understanding from the parties, that appellant was embarrassed, and that the other parties had advanced the money to relieve him from his pecuniary necessities, and that if appellant should refund the money within two years, they would reconvey the land.

Again, whilst the bond provides that in consideration that no interest shall be paid, Feaman and Gilbert are not to be accountable for rents. If it had been designed as a conveyance and a resale, no necessity existed for stipulating against their paying rents, as in that case the land would have been their own. But understanding it to be a mortgage, they must have known that they would be accountable for rents and profits. It seems that the rents were largely in excess of the interest on the sum advanced. This may have, and probably did, suggest

the necessity of inserting this provision, to avoid liability to account for the rents on the redemption of the land. It is also probable that it was designed to evade the laws against usury.

This all seems to establish the fact that it was the intention of the parties to make it a security for a loan, and not a sale with the right to repurchase. And whilst the evidence is somewhat conflicting, yet when all of the circumstances are considered, we cannot avoid the conclusion that it was designed as a mortgage to secure a loan.

It is, however, insisted, that although the weight of evidence may establish it to have been a loan and security, yet it is not sufficient to overcome the sworn answers of the defendants. We regard the evidence of the scrivener who drew the papers, sufficient to establish it a mortgage, in the absence of an answer under oath. The transaction disclosed by the mere production of the deed and bond, would, unexplained, raise the same presumption, and would be sufficient to authorize a decree allowing a redemption, had there been unsworn answers in the case. The evidence afforded by this witness, and the papers themselves, we regard as sufficient to overcome the answers in the case. We are, therefore, of the opinion, that the evidence establishes this to have been a mortgage at the time of its execution.

This, then, being a mortgage, it still remains such, until foreclosed. There is no rule of law which requires that a redemption shall be made within the time limited by the mortgage. Until foreclosed, it is a subsisting right, unless barred by the lapse of time. This being the case, appellant has a right to redeem the premises. But he has no right to insist upon an account of the rents, as he has expressly agreed in the original transaction that they shall not be accounted for by the mortgagees; and those holding under them, hold under the same exemptions. He was not to pay interest and they were not to account for rents and profits. It would be highly inequitable and unjust for him to escape the payment of interest, and to receive rents and profits of the mortgaged premises,

in violation of his express agreement. The decree of the court below must be reversed and the cause remanded.

*Decree reversed.*