## DEMING INV. CO. v. CHRISTENSEN et ux.

No. 6037—Opinion Filed July 11, 1916.

Rehearing Denied August 25, 1916.

(159 Pac. 663.)

**1. Brokers—Right to Compensation—Performance of Contract.**

A contract, whereby C. and wife appoint D. as their agent to procure a loan of money uncoupled with an interest, may be revoked by the principal at will without liability for damages, but where, according to its terms, it is contemplated that the agent shall expend time and money to carry it out, and the agent accepts said contract and does expend time and money in pursuance of the object of the agency, and does procure a party who is willing to loan the money for the time and according to the terms of the contract, the principal cannot revoke the same except upon the burden of responding to the agent for such damages as he may suffer by reason thereof. Such contract in that state of case is not void for want of mutuality, but the same is an enforceable, valid, and binding contract.

**2. Same—Liens.**

The contract in this case examined, and held to be valid, supported by a sufficient consideration, but that D. is entitled to recover only $350 thereunder, provided no fraud was practiced upon C. and wife in the execution of said contract, and provided, further, that C. and wife were not justified in refusing to comply with said contract, on account of the mortgage presented to them to sign, containing impositions in its terms not contemplated by the contract between the parties, and to secure the payment thereof is entitled to a lien on the real estate named in the contract not released by D.

(Syllabus by Hooker, C.)

Error from District Court, Alfalfa County; James B. Cullison, Judge.

Action by Henry C. Christensen and wife against the Deming Investment Company. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

Charles B. Mitchell and H. A. Kroeger, for plaintiff in error.

C. H. Mauntel, for defendants in error.

Opinion by HOOKER, C. On December 16, 1912, the parties hereto made and entered into the following contract:

"To the Deming Investment Company:

"I hereby appoint you my agent to negotiate for me either in your own name or in that of any one whom you may choose, a loan of seven thousand dollars, on 7 years' time, bearing interest at the rate of 5 per cent. per annum, payable annually, on the first day of January, and ———— in each year, to be secured by first mortgage on land hereinafter described; note and mortgage to

be made payable to any one the lender may desire, with the principal made payable wherever the lender may designate, and on such blanks, i. e., notes and mortgages, as the lender may furnish.

"My land upon which I desire this first mortgage loan is as follows:

"The lots 3 and 4 and E. ½ S. W. ¼, Sec. 18, and lots 1 and 2 and E. ½ N. W. ¼, Sec. 19, Twp. 28, N. R. 10 W. in Alfalfa county, Oklahoma.

"As compensation for your services in negotiating this loan I hereby agree to pay you or the assignees of this contract, the sum of nine hundred eighty dollars, payable in four notes as follows:

"$245.00 due Jan. 1st, 1914, $245.00 due Jan. 1st, 1915, $245.00 due Jan. 1st, 1916, $245.00 due Jan. 1st, 1917, to bear 10 per cent. interest from maturity, until paid, and to be secured by second mortgage on the above-described land, subject only to the principal loan of $7,000.00.

"I further agree to furnish and pay all expenses of abstract of title to the property offered as security in my application, and as above described. I also agree to pay for recording the mortgage or mortgages, and each and every other instrument necessary to clear the title of all incumbrances and perfect said title in me.

"I further agree to pay interest on money from Jan. 10, 1913, or from any date thereafter that the papers in said loan may designate.

"For value received, I do hereby promise and agree to pay such actual expenses as you have incurred in the negotiation of the loan and examination of the property, and title, if I do not obtain said loan by reason of defect in my title, or by reason of my being unable to remove all incumbrances from said land, and if you or any negotiator to whom you may apply for me for above loan, notify me of acceptance of said, and I am unable to or refuse to complete the said loan, then I agree to pay 5 per cent. on amount of loan applied for, and all other expenses you or the assignee of this contract may have incurred for such refusal or inability to complete said loan.

"And I do authorize you or the assignee of this contract to receive all money due me on said loan and to pay off to the mortgagee, or the firm, or the company which negotiated said loans, all incumbrances, leases, taxes and liens of every kind on my said land, necessary to be paid to perfect my title to said lands or any part thereof. And if the loan hereby applied for should not be sufficient to pay off all liens I agree to pay the deficiency within ten days after the said note and mortgage are executed. If said premises are occupied by any person, or child of legal age, or are rented or leased, I agree to obtain and deliver to you the written disclaimer of said tenant or person, in favor of lender.

"I agree to keep the buildings on said premises insured against fire, lightning and windstorm, until the said loan is fully paid, in the sum of $1,500.00, all policies to be written for not less than three years term in reliable insurance companies, approved by you or the lender and to have to each attached a subrogation mortgage clause with loss, if any, made payable to the said lender or assigns. Said policies with premiums prepaid shall be delivered prior to payment to me of the proceeds of said loan and if, for any reason, I should fail to deliver such insurance policies, you or the lender or assigns are hereby authorized to have all policies written and the premium therefor deducted from the proceeds of said loan.

"It is also agreed that your authority to negotiate said loan as my agent be irrevocable for thirty days after I shall have furnished you complete and satisfactory abstract of title, showing perfect title in applicant.

"As security for the payment of any and all sum or sums of money to which you may be entitled under this contract, I hereby pledge and mortgage to you the above-described real estate.

"In witness whereof, I have hereunto set my hand Dec. 16, A. D. 1912.

"Henry C. Christensen.
"Applicant.
"Minnie Christensen.

"Signed in the presence of
"Tyler T. Wales.
"J. D. Fouraker."

In the petition it is alleged that the defendants in error on the 16th day of December, 1912, and at the time of the institution of this action, owned a part of the real estate described in said contract, and occupied the same as a homestead, and that on the 16th day of December, 1912, they negotiated with an agent of the company for a loan on said property, with which they intended to purchaser another farm, and that it was understood and agreed that if the title to said additional farm was not good, the loan was not to be made to them, and that the application for said loan was to be destroyed; that thereafter the agents of the company called upon said defendants in error and destroyed the old contract, and thereupon a new contract was agreed upon and signed by the parties, but that the defendants in error signed said new contract upon the representation made by the agents of the company that the new contract was similar to the old except as to number, amount, and date of the payment of the notes to be executed for the commission; that the title to said farm which they desired to purchase was defective, and on account thereof, and for the further

reason that they were requested to sign papers not contemplated by the contract, they refused said loan, and so notified the company; that said contract was not the contract signed by them, and that their signature thereto was procured by fraud and misrepresentations. And it is further claimed by said defendants in error that said contract was without consideration, and that the same was placed upon the records in the office of the register of deeds in order to compel the defendants in error to pay something for its release. It was sought by the petition to cancel the contract and to remove the same from the record as a cloud upon the title. The company filed its answer and cross-petition, consisting of a general denial, and admitting the contract and asserting the same was executed for a valuable consideration and was a binding, valid, and enforceable contract, and the company further alleged that it had complied with the terms thereof, but that the plaintiffs had failed to comply therewith, and that under the contract there was due to it the sum of $980 for its services for which it sought judgment, and it also sought to have the same declared a lien upon the real estate named in the contract not released by the company as under the contract provided. The lower court after hearing the evidence rendered the following judgment:

"The court finds from the evidence in this case that the loan contract on which the defendant bases its claim to a lien on the land in question is without consideration, and void.

"The court further finds that said loan contract was never acknowledged, or that any attempt was made by the notary public to take the acknowledgment of the parties who signed the contract; that said contract was signed by the notary in an eating house six or eight miles away from the home of the plaintiffs herein; that the same has no binding force or effect upon the land in question, and is not a lien upon the land; that the same is, by the court, adjudged and decreed to be not a lien.

"It is by the court ordered and adjudged that said loan contract be canceled, set aside, and held for naught.

"It is further ordered and adjudged by the court that the plaintiffs have judgment against the defendant for the cancellation of said loan contract, and the costs of suit."

The first question to be determined here is whether this contract is a valid, binding, and an enforceable contract between the parties under the record as presented to this court. By this contract Christensen and wife employed the Deming Investment Company as their agent for the purpose of procuring a loan upon certain real estate, and agreed to pay said company for its services a specified sum. It is alleged in the petition and established by the evidence that, after the execution of this contract, the company undertook to perform the services contemplated by it, and it did procure a party financially able and willing to loan the money desired by the defendants in error, and in accordance with the contract entered into between Christensen and wife and the company, and it further appears that when the company called upon the defendants in error to close the deal, they refused to do so. This court in the case of Cloe v. Rogers, 31 Okla. 260, 121 Pac. 203, 38 L. R. A. (N. S.) 366, said:

"We may say the general rule seems to be that, where an agency is uncoupled with an interest, it may be revoked by the principal at will, without liability for damages; but where it is for a fixed time, and contemplates on the part of the agent the expenditure of time and money to carry it out, and is accepted and the duties imposed are entered upon by the agent, and money and time are expended in pursuance of the object of the agency, although the principal has the power to revoke and bring to a termination the contract, yet he lacks the right of so doing, except upon the burden of responding to the agent for such damages as he may suffer by reason thereof."

See authorities cited in 31 Okla. 261.

In the case of Fontaine v. Baxley, 90 Ga. 416, 17 S. E. 1015, the Supreme Court of Georgia said:

"After part performance, to the extent of going to New York and opening business, mutuality is not wanting in a contract which stipulates that one party shall go to that city and there open and conduct a business on his own account for the sale of a commodity not an article of general commerce, and that the other party shall furnish and deliver to him, at a specified price, so much of the commodity, not exceeding a given quantity monthly, as he (the proprietor of the new business) shall pre-engage to his customers during the period of one year, the mode of conducting the new business contemplated being that the proprietor of that business is to discover purchasers, make binding contracts with them, and then order and receive enough of the commodity from the other party to fill such contracts."

In the case of Smith v. Bangham et al., 156 Cal. 359, 104 Pac. 689, 28 L. R. A. (N. S.) 522, the Supreme Court of California said:

"An option to plaintiff to purchase certain real estate for a specified price, on or before February 26, 1906, when the grantor agreed to furnish an unlimited certificate of title, etc., was a unilateral agreement, which was not binding on the holder until he exercised the option and elected to purchase. The

election of the holder of an option to purchase real estate, to exercise the option within the time limited thereby, was sufficient to bind him and to constitute an enforceable mutual contract."

In the case of Goward v. Waters, 98 Mass. 598, it is said:

"The position of the defendant's counsel is undoubtedly true that at the time the contract was signed it was a mere nudum pactum. The plaintiffs paid nothing, incurred no expense or loss, and entered into no obligation on their part. They were at liberty to act or not as they pleased, and would incur no liability by failing to do anything. But it is also apparent that the writing contemplated services to be rendered and expenses to be incurred by the plaintiffs for the defendant, and that the promises were made in view of such future services and expenses. The writing is merely a stipulation, by the defendant, of the terms upon which compensation shall be made by him. Subsequent performance of services and expenditure of money, in prosecution of the employment thus authorized, furnish a sufficient consideration for the promises of the defendant. Train v. Gold, 5 Pick. [Mass.] 380; Gardner v. Webber, 17 Pick. [Mass.] 407."

In Des Moines Valley R. R. Co. v. Graff et al., 27 Iowa, 99, 1 Am. Rep. 256, it is held:

"If one promise to pay another a sum of money if he will do a particular act, and he does the act, the contract is not void for want of mutuality, and the promisor is liable, though the promisee did not, at the time of the promise, engage to do the act; for, upon the performance of the condition by the promisee, the contract becomes clothed with a valid consideration, which relates back and renders the promise obligatory."

In the case of Attix, Noyes & Co. v. Pelan et al., 5 Iowa, 337, it is held:

"Where the defendants entered into a contract with the plaintiffs, granting the exclusive authority to negotiate a sale of certain property for two months, and thereafter until withdrawn in writing, the plaintiffs to be allowed 2½ per cent. commission, and providing that if any sale negotiated by plaintiffs shall fail by reason of defective title, commissions shall be allowed as though the same had been consummated, also that commissions should be allowed if defendants availed themselves after withdrawal of any negotiations had by plaintiffs before such withdrawal, or if defendants should in any way fail to confirm a sale negotiated by plaintiffs, and also providing that plaintiffs should have all over the price named, and if the excess should not amount to 2½ per cent., then defendants were to make it that amount, signed, 'Pelan & Anderson;' and where in an action on the contract, the plaintiffs aver performance by effecting a good and profitable sale, but that defendants without advising plaintiffs sold the property before the said two months had expired, and thereby rendered themselves unable to comply with the sale of said lands, which would have yielded plaintiffs a compensation of $3,000, whereby the defendants have become liable to pay the plaintiffs said sum as damages, to which petition a demurrer was sustained by the court—held: (1) That the contract was not void, for want of mutuality; (2) not void for want of consideration; (3) that during the two months the defendants could not revoke the contract, nor sell the property without compensating plaintiffs for the services rendered, and that if the acts of the defendants hindered or prevented any sale the plaintiffs might or could have made, they are liable for all the compensation such sale, if made, would have brought the plaintiffs."

In Andreas v. Holcombe, 22 Minn. 339, it is said:

"1. A writing promissory to pay to A. a specified sum when A. shall perform certain acts, though it contains no promise of A. to do the acts, and shows no past or present consideration, becomes binding upon the promisor if, before it is revoked, A. perform the acts pursuant to it.

"2. An allegation in the complaint that the plaintiff 'has fully performed all the terms and conditions of said contract to be done and performed by him in accordance therewith' is a sufficient averment of the doing of the things required to render the promise obligatory."

In the case of Jones v. Snow et al., 64 Cal. 456, 2 Pac. 28, it is said:

"A promise may be a consideration for a promise, and where a promise of money is made for doing a certain act, the performance of which is not promised, yet, if it is performed, the plea of nudum pactum is not available in a court of law."

In the case of Wheeler & Wilson Mfg. Co. v. Lyon (C. C.) 71 Fed. 374, it is held:

"Alleged want of mutuality in an agreement guarantying the performance of the contract of another is no defense, where the contract had become executed."

In Varney v. Bradford, 86 Me. 510, 30 Atl. 115 the Supreme Court of Maine said:

"In a contract under seal, containing mutual covenants, and which imposes an obligation upon one party to pay money to the other, but contains no covenant or promise to pay it, the contract having been wholly performed in all other respects, the money may be recovered in an action of assumpsit, upon an implied promise."

Is the plaintiff in error under this contract entitled to a lien upon the real estate named therein not released by it to secure the payment of whatever sum of money may be due to it by the defendants in error for services performed? Upon an examination of the contract we find that:

"As security for the payment of any and all sum or sums of money to which you may be entitled under this contract, I hereby pledge and mortgage to you the above-described real estate."

It is contended by the company that this is a mortgage upon this real estate to secure the payment of whatever sums may be due it for the services rendered by it for the defendants in error. But the defendants in error contend that the same cannot be considered a mortgage, for the reason that the contract was never acknowledged, and that the same is a homestead, and the contract is not properly signed or executed in order to waive the homestead lien given to them by the laws of this state. By reference to the statute (section 1143 of the Revised Laws of 1910), we find the only requirement named therein is that the deed, mortgage or contract relating to the homestead, in order to be valid, must be in writing and subscribed by both husband and wife, and by section 1154 of the Revised Laws of 1910, it is expressly provided that no acknowledgment or recording shall be necessary to the validity of any deed, mortgage, or contract, relating to real estate between the parties thereto. Hence under the statute we must hold that the acknowledgment of the contract was not necessary in order for the same to be binding between the parties thereto, and inasmuch as it is clear from the language used that it was the intention of the parties to mortgage this real estate in order to secure the payment of the amount due by them to the company, we are of the opinion that the same constitutes a lien thereon. In 27 Cyc. p. 987, it is said:

"As a general rule, any written contract entered into for the purpose of pledging property or some interest therein as security for a debt, which is informal or insufficient as a common-law or statutory mortgage, but which shows that it was the intention of the parties that it should operate as a charge on the property, will constitute an equitable mortgage and be enforced as such in a court of equity."

See the authorities cited in the note on said page from the states of Illinois, Indiana, South Carolina, Virginia, West Virginia, Wisconsin and Minnesota. And in the same volume (page 976) it is said:

"An equitable mortgage may be constituted by any writing from which the intention to do so may be gathered. Thus a contract in writing to secure a debt specified therein, in which the parties expressly declare their intention to create a lien, by way of mortgage, upon real estate particularly described, upon the failure of conditions fully set forth, is an equitable mortgage, which, on nonpayment and breach of the conditions, may be fore-

closed in the ordinary way in a court of equity."

And in the note on page 977 it is said:

"Any formula of words which plainly shows the intention to transfer property by way of security will suffice to raise a mortgage in equity. It was so held in a case where the contract between the parties undertook to 'pledge the real and personal estate' of one as security for the payment of a sum of money to the other. Mobile, etc., R. Co. v. Talman, 15 Ala. 472. So where A., having received the property of B. to invest it for B.'s advantage, gave a paper, not in form of a mortgage, acknowledging the receipt of the property, and declaring that certain specified property of his own was mortgaged to secure B., it was held that this would operate as a mortgage upon the death of A. insolvent. Menude v. Delaire, 2 Desaus. (S. C.) 564. Where a husband and wife made a release deed of their real estate, containing the following clause: 'On condition that, whereas, the said grantees have lent us one thousand dollars to be paid three years from this date, without interest, they taking in lieu thereof the rents and profits of said land, if we shall pay said money, this deed shall be void, else valid; if not paid and a forfeiture occurs, the land shall be taken in full payment of debt and interest, without further claim upon us, or either of us'—and the grantees took possession. it was adjudged to constitute an equitable mortgage. Jarvis v. Woodruff, 22 Conn. 548."

And in the case of Preschbaker v. Feaman, 32 Ill. 475, it is held, in equity, in determining whether or not a given transaction is to be treated as a mortgage, the form of the transaction is not regarded, but the substance must control. The intention of the parties, to be gathered in the light of surrounding circumstances, must give character to the contract in that regard. In the case of Donald v. Hewitt, 33 Ala. 534, 73 Am. Dec. 431, it is held:

"Where, by the terms of a contract, expressly giving a lien on certain property, such property is not to remain in the possession of the one to whom the lien is given, the contract will be construed to amount to an equitable mortgage, and not to a common-law lien."

Also in Jones on Liens, sec. 77, it is said:

"An agreement, on a sufficient consideration, to give a mortgage on specific property, creates an equitable lien upon such property, which takes precedence of the claims of the promisor's general creditors, and of the claims of subsequent purchasers and incumbrancers with notice of the lien."

See authorities cited at note 19 on page 177 of Jones on Liens.

Under the view that we take of this contract the plaintiff in error is entitled to a

lien upon this property named in the contract, not released by it, to secure the payment of whatever sums of money is due to the company.

By reference to the contract we find that it is provided "that in the event the defendants in error are notified of the acceptance of said loan and they are unable to or refuse to complete the transaction that they will pay five per cent. on the amount of the loan applied for," and under this provision of the contract there would be due the company the sum of $350.

Where a party bound to the future performance of a contract puts it out of his power to perform it, the other party may treat this as a breach and sue him at once, for there is an immediate right of action for a breach of contract by anticipation. And the cases go a step farther, although technically and strictly speaking there can be no breach of contract until the time for performance has arrived, yet if before that time arrives the promisor expressly renounces the contract and declares his intention not to perform it, the promisee may, in most jurisdictions, treat this as a breach. and may at once bring an action for damages; that is, positive notice of an intended breach of a contract to be performed in the future may be treated as an actual breach. See 9 Cyc. 698, and authorities there cited.

Applying this rule to the instant case, a cause of action in favor of the company and against the defendants in error arose when they refused to comply with their contract by executing the note and mortgage in order to accept the loan negotiated for by them, as stipulated in the contract between them and the company. If the defendants in error had not changed their minds with reference to negotiating this loan, they could have procured the same from the Prudential Life Insurance Company through the negotiations of the plaintiff in error. The Deming Investment Company complied with its part of this contract, or as much thereof as it could have complied with, and failure of defendants in error to procure this loan was due exclusively to their refusal to complete this contract. and so when they refused to complete said contract and signified their intention not to comply therewith by accepting said loan or to complete any negotiations whatever therefor, they breached the contract, and a cause of action arose in favor of the company against them for whatever sum was due to it under the contract agreement.

As we view this contract and this agreement, the plaintiff in error is not entitled to recover $980, as prayed for in its petition,

but is only entitled to recover in any state of case the sum of $350, provided in the execution of said contract. The company practiced no fraud upon the defendants in error, nor sought to induce or compel them to execute other papers than those contemplated by the contract which they should not have executed.

If the mortgage when tendered by the company to the defendants in error for execution contained conditions not contemplated by the contract between the parties, such as obligating defendants in error to pay the tax on the mortgage or note to be executed by them, then the defendants in error were justified in refusing to sign said note and mortgage, and properly refused to comply with the contract with the company. This cause is therefore reversed and remanded.

By the Court: It is so ordered.